## AMBRICK MAPLES v. VIOLET MAPLES.

1. HABEAS CORPUS—FOR WHAT IT LIES.—The Code of 1871, § 1396, provides "that
the writ of *habeas corpus* shall extend to all cases of *illegal confinement* or *deten-
tion* whatever, by which any person is deprived of his liberty, or in which the right-
ful custody of any person is withheld from the person entitled thereto." By § 1400,
the petition for the writ shall be in writing, under oath, and shall describe by whom
the party is deprived of his liberty, and the circumstances of the restraint.  Can an-
agent swear to such a petition?  *Quære.*

2. SAME.—In determining such writs, the Chancellor should be governed by the wel-
fare and age of the minor.  If its condition would not be materially improved by
the change sought for in the writ, it should be refused.  Foster v. Simmons, 6 How.,
406; Cocke v. Hannum, 39 Miss., 425.

: Appeal from the chancery court of DeSoto county.  Hon.
J. F. SIMMONS, Chancellor.

The appellant assigns as error:

1. The court erred in overruling appellant's demurrer.  2.
The court erred in decreeing that the boy, Boss, should be
placed in the hands of appellee or her agent.  3. The court
erred in taxing appellant with costs.

Violet Maples, a citizen of Limestone county, State of Ala-
bama, filed her petition in the chancery court of DeSoto
county, alleging that she is the mother of Boss Maples, aged

about fifteen years. That said boy, Boss, left her home, and she believes he was induced to do so by Ambrick Maples; and said boy is now in the possession of said Ambrick Maples, and he absolutely refuses to give possession of said boy to petitioner. She believes that Ambrick Maples will carry said boy, Boss, out of the jurisdiction of the court, unless the court will take charge of said boy, and asks for writ of *habeas corpus*, which was granted by the court.

Defendant, Ambrick Maples, filed a demurrer to said proceeding: 1. Because said petition did not allege that said boy, Boss, was restrained of his liberty, and because petitioner showed that said boy was over fifteen years of age, and had a right to elect who he would stay with. The court overruled the demurrer.

Ambrick Maples filed his answer, stating that said boy, Boss, was eighteen years of age. Said boy came to his house in December or January last. He knows nothing about Boss leaving the house of petitioner; he did not induce him to come; he furnished him no money to pay his expenses. He denies that said boy, Boss, is in his custody, or has been since he came here. Said boy worked with him last year. He was in rags when he came. He had him taught, clothed him, and paid his hire to his mother. Said boy is his grand-son. He has nothing to do with him. Boss hires himself, makes his own contracts and collects his own money. He permits him to stay at his house, as any other relative; he does not drive him away. Said boy is unwilling to go to Alabama, and he believes will not go unless taken as a prisoner.

Appellee introduced Mr. Bridgforth, who stated that before a writ of *habeas corpus* was issued he went to the house of Ambrick Maples, and found the boy, Boss Maples, there. His nephew showed an order from Violet Maples, authorizing him, John Bridgforth, to bring suit for the possession of the boy, Boss, and directing Ambrick Maples to deliver the boy to John Bridgforth. The boy, Boss, was

present. Said he did not want to go to Alabama. Ambrick Maples said the boy might go if he wanted, but that he would resist John Bridgforth or any officer who attempted to take him forcibly. That he had hired him for the year, and that the negroes had the power and intended to keep it.

John W. Bridgforth states that he had a written authority from Violet Maples, mother of Boss, to demand him, etc. I went, with my uncle, Bridgforth, and demanded him. Ambrick Maples refused to deliver him. Boss was present; said he did not want to go. Ambrick Maples would say Boss might go if he wanted, then he would say he should not go. Violet Maples is cooking for my father-in-law. He hires her by the month. She eats in my father-in-law's kitchen. Ambrick Maples told us that he furnished the boy, Boss, with money to come back on if he did not like to stay in Alabama. Violet Maples has been married to her present husband several years; has two other children, the youngest about two years of age. She gave me no money; promised to pay my expenses. The father of Boss is a white man; his mother a negro, and formerly a slave.

Appellee proved by Ambrick Maples, who states that Violet Maples and her children, came to this State last Christmas was a year; said she had parted from her husband; she went back the next fall; Boss was unwilling to go with her; I hired Boss from her for last year, and paid her the hire; did not persuade him to come back from Alabama; I did not know that he was coming back until he and another boy, Jo., came; I thought Mr. Bridgforth wanted the boy Jo.; I have never detained Boss, or restrained him of his liberty; 1 told him he could stay at my house if he wanted to, as I would any relative; he has never been in my custody; he has hired himself to my neighbor, Captain Manning, to pick cotton; makes his own contracts and collects the money; he comes to my house, and I think, regards it as his home; I have told him to go to his mother, in Alabama, and if he did not have the money I would loan the same to him to pay his way on

the cars. Boss was seventeen years old last June. His mother has had seven children, all by different men.

A. J. Jeffries proves, that the two Mr. Bridgforths live at his place; Ambrick Maples lives on my place; they were all talking a good deal; Bridgforth had a letter from Boss Maples' mother, but said Jo. was the one he wanted, that Jo. was apprenticed to him; Bridgforth said he had nothing to do with Jo. Boss was his grandson, and he might go if he wanted to.

Boss Maples states, that he left Alabama since Christmas; his father, who lives in Louisiana, gave him four dollars, and his mother gave him five dollars of the money she had received from my grandfather for last year's hire, and came with that money; I hired myself to Capt. Manning, and he paid me $5.00; I make my own contracts; my grandfather does not prevent me from going where I choose; he did not persuade me to come back, and furnished me no money to pay my way; I do not want to go back to Alabama; I want to stay here; my mother knew that I was coming back here, and told me I might come if I wanted to.

Plaintiff introduced J. W. Bridgforth, who states that he would have taken Boss forcibly and against his will to his mother in Alabama, if necessary, if it had not been for Ambrick Maples.

*Sam. Powell,* for appellant:

The court should have sustained appellant's demurrer to appellee's petition for writ of *habeas corpus.* The petition alleges that Boss Maples is fifteen years of age, and is the son of appellee, who is the mother of said Boss, and that he is in the custody of Ambrick Maples, the appellant. Is this a sufficient allegation to authorize the issuance of a writ of *habeas corpus?* There is no pretense that appellant confines Boss, or restrains him of his personal liberty. He is free to go when he pleases, and he is fifteen years of age. The father is bound to maintain his child until he is old enough to maintain himself, and in consequence of this he is entitled

to his custody and the value of his labor and services; but is the mother chargeable with his support, etc.? She is not, only when she has separate estate, and the child unable to support itself, and likely to become a public charge. See 2 Kent, p. 192. We insist that the petition for writ of *habeas corpus* should allege that the boy was restrained of his liberty, or that appellant detained him against his will.

But upon the facts of the case the proof conclusively shows that the appellant, Ambrick Maples, has not the custody even of the boy Boss. Boss stays sometimes with appellant, who is his grandfather, but hires his own time, makes his own contracts, and collects his own money, and is from fifteen to eighteen years of age. The only person who proves his age is his grandfather, appellant, and he says he is eighteen. Bridgforth, the agent of his mother, swears, in his petition, that he is fifteen years old. Then when will the right of the mother cease to sue out the writ of *habeas corpus.* Boss might marry before he was twenty years of age; and we'suppose then, according to the theory of the court who pronounced the judgment in this case, the agent of the mother could sue out the writ of *habeas corpus,* have the boy placed in his possession by the judgment of the court, and forcibly take him from his wife, or even his children, and carry him into a neighboring State. Chancellor Kent says, that a father may obtain the custody of his children by writ of *habeas corpus,* when they are improperly detained from him, but the courts, both of law and equity, will investigate the circumstances, and act according to sound discretion, and will not always, of course, interfere and take a child, though under fourteen years of age, from the possession of a third party, and deliver it over to the father against the will of the child; they will consult the inclination of the infant if it be of sufficient mature age to judge for itself, etc. (See 2 Kent, pp. 194 and 195.) Then if the boy is not detained by a party, or restrained of his liberty, and over fourteen, and is eighteen years of age, will the law permit the courts to interfere and imprison a boy to force him to go to his mother? Then upon

the subject of when is it to the interest of the child to stay? His mother has had six children, all by different men; she now has a husband; she is a hireling; has no home, and is living in the kitchen of the father-in law of the agent of appellant. Boss was naked when he came here, and was clothed and sent to school; here he can make a good support and educate himself.

A father cannot maintain any of the possessory actions to recover possession of a child against one who employs him. He may sue for the value of his labor, and, under certain circumstances, may recover the same; and he has the right to use his parental authority to force a child to stay with him; but we insist where the child is over fourteen years of age, and not restrained of his liberty, or detained against his will, he cannot invoke the aid of a court by writ of *habeas corpus* and have the child arrested and imprisoned, against his will, placed in the custody of the agent of the parent, to be forcibly taken, against his will, to another State. Can parents delegate their rights to another party to use their parental authority to force a child of this age, against its will, to leave the State? Bridgforth says he would have taken Boss forcibly, and against his will, to Alabama, if appellee, Maples, had delivered him up to him. Then would not Bridgforth have been guilty of an assault and battery, or false imprisonment of the boy Boss, and can he call unto his aid the powers of the court to enable him to commit an offense? We think that the only order the court could make in this case was to discharge the boy from the arrest under the writ of *habeas corpus.*

*Stokes & Morgan,* for appellee:

If it were necessary, in order to maintain the petition for the recovery of this child, to allege that respondent restrained it of its liberties, would it be because, being fifteen years of age, it has the legal right to elect with whom it will stay? If the boy, in consequence of his age (fifteen years) has the right to elect with whom he will stay, then the petition

must allege that he is restrained of his liberties, and it could only be performed by the boy himself, or some one acting in his behalf.

The principle here asserted, then, the demurrer admitting all the allegations of the petition, and raising nothing but questions of law, is, that a child fifteen years old, so far as the right to control its own movements and person is concerned, has acquired the rights of a person twenty-one years old. In other words, it has attained its majority, and the rule of parental authority and discipline is at an end. Under this principle, if Boss Maples had not chosen to relieve himself from parental authority, by flight, he could have done so by *habeas corpus* against his mother, for he would have the right to elect with whom he would stay. This cannot be law.

There is a rule of law covering and intending to cover, a wholly different state of facts, arising out of the relations of husband and wife, and parent and child, somewhat similar to this. Where there is a contest between the father, on the one side, and the mother on the other, as to the custody of their children, each being of sufficient ability to maintain and educate the child, and of equal moral character, the State nor the child suffering detriment, and the child being of age to exercise a choice, the court will leave the child to elect with which of the two it will go. This rule is an exception to the old common law rights of the father, under which he was understood to be preferred, in all cases, to the mother, in the matter of the custody of their children—nothing more. The rule was applied by this court in Foster v. Simmond, 6 How., 406. The age of majority is twenty-one years, and during this period all are infants, and subject to parental authority and discipline. The rights of parents arise from their duties. The duties of parents to their children are, maintenance and education. If the parent be of sufficient ability to furnish his children with the necessaries of life, neglect to do so is an indictable offense. 2 Kent's Com., 184, note 1, and cases cited. In consequence of the

obligation of the father to provide for the maintenance, and in some qualified degree, for the education of his infant children, he is entitled to the custody of their persons and the value of their services. 2 Kent's Com., 186. All interference with parental authority, except by the courts of justice, when that power is abused, is injurious to domestic subordination and to the public peace, morals and society. 2 Kent's Com., 211; note 2. Upon the death of the father, his authority and duty over the children devolve on the mother. 2 Kent, 212, 213 and 214.

There is no difference in the law with regard to an illegitimate child so far as the mother is concerned. She is bound to the same duties of maintenance and education, and entitled to the same rights resulting from those duties. 2 Kent's Com., 225. The father may obtain the custody of his children by the writ of *habeas corpus* when they are improperly detained from him. Ib., 187. It is submitted that the second clause of section 1396, Code of 1871, under which the petition in the case was preferred, and which extends the writ of *habeas corpus* to all cases in which the custody of any person is withheld from the person entitled thereto, is an express recognition of the right of the parent in the premises, by furnishing the remedy for its enforcement. Violet Maples, in her petition, alleges that her said son Boss, is now in the custody of said Ambrick; that he absolutely refuses to give possession of said Boss to her. This sets forth a restraint of his liberties, and the court did right in overruling the demurrer.

Rights and duties are correlative. If Violet had the right to the custody of the person of Boss, it was the duty of Ambrick not to refuse it to her.

Being in the custody of the court, and the court having concluded as to who was entitled to him, what was it to do? It was its unquestionable duty to either turn the boy over to its mother, or apprentice him under § 1793 of the Code. This latter, in this case, the court could not do, for the mother was before the court, asserting her claim to the boy,

and alleging her inability to take charge of him by reason of Ambrick's interference. To have discharged him in open court, with a simple order on the minutes that the mother was entitled to his custody, provided she could catch him before he could get under the protection of Ambrick's strong arm, otherwise she must take out another writ, would have been a mockery of justice. Under such circumstances it was the duty of the court to order its officer to turn said Boss over to his mother. Under § 1409, Code 1871, it is made the duty of the judge to award the custody to the party entitled thereto." The court certainly has authority to execute its own award.

3. Ought appellant to have been taxed with the costs? He denies, that Boss is or has been in his custody, in his answer, but with it he couples his information that there is no law that will permit said boy to be awarded to his mother and conveyed to Alabama, because his mother is there, and, therefore, he did not restrain him of his liberty. The proof is conclusive that said boy was in his custody, and but for his interference, Bridgforth says that he, as the agent of Violet, would have taken charge of Boss, by force, if necessary, and carried him to his mother. He had the right to do it. All the testimony goes to show that Ambrick said he would resist an officer or anybody who might attempt to take Boss to his mother. He has resisted his mother in every way known to the law, and is now doing so before the court of last resort. He is the author of the litigation. It is absurd to say that a child may flee from its mother, take shelter in the house of a third person, and when the mother pursues, have her successfully resisted by such persons, and continuing so, and yet say that the child is not in the custody of such person, because he avers that he did not restrain the child of its liberties. Appellant ought not only to be taxed with costs, but when, arrested for contempt of court, he feigned sickness; the court ought to have ordered him to be brought in, and have taxed him thirty days in the county jail.

VOL I—26

TARBELL, J., delivered the opinion of the court:

*Habeas corpus* before the chancery court of DeSoto county by Violet Maples, for the possession of her minor son, Boss Maples. The petition represents that Violet is a resident of the State of Alabama, and that she is the mother of Boss, who, at the date of the petition, was aged about fifteen years; that in December, 1872, Boss left her home and custody, as she believes, induced by Ambrick Maples, in whose custody, in DeSoto county, he now is; that Ambrick refuses to give up the possession of said Boss to petitioner; that she believes that, unless Boss is ordered into custody, he will be removed or concealed by Ambrick Maples, and prays for an order delivering her son into her possession. The petitioner, Violet Maples, is, in fact, now in the State of Alabama, and this writ is prosecuted in her name by her agent; the petition being signed, "Violet Maples, per John W. Bridgforth, agent," and is sworn to by the agent.

Ambrick Maples demurred to the petition, stating for cause: 1. That the petition does not allege that respondent restrains said boy of his liberty; and, 2. That the petition shows that said boy is fifteen years of age, and is of sufficient age to elect with whom he will stay.

The demurrer was overruled, and the respondent answered that he is the father of Violet Maples, and grand father of Boss; that Boss was eighteen years old in June, 1872; he denies that the boy was induced to leave his mother by respondent; denies that the boy is in his custody, or that he has been during the year; denies that the boy is in any way restrained of his liberty; that the boy has stayed with him as with any relative; and, from what he has heard the boy say, he will not return to Alabama unless confined and forced to go.

The decree was rendered February 6, 1873, and directed the body of the boy, Boss Maples, to be delivered to his mother, or her agent; that the costs of this suit be paid by

Ambrick Maples; that, pending the appeal which was prayed, the boy be confided to the care of R. J. Jeffries.

The case at bar seems to be this:

1. The Code, § 1396, provides, that "the writ of *habeas corpus* shall extend to all cases of *illegal confinement* or *detention* whatever, by which any person is deprived of his liberty, or in which the rightful custody of any person is withheld from the person entitled thereto." By § 1400, the petition for the writ shall be in writing, under oath, and shall describe by whom the party is deprived of his liberty, and the circumstances of the restraint.

In this case the petition is in writing, sworn to by an agent of Violet Maples, and states, "that her said son, Boss Maples, is now in the custody of said Ambrick Maples, on the plantation of R. J. Jeffries, near Horn Lake, DeSoto county, Mississippi, and that said Ambrick Maples absolutely refuses to give up the possession of said Boss to your petitioner." Whether the petition uses equivalent words for an "illegal confinement or detention," or "deprivation of liberty," employed by the statute, need not, in view of the conclusion upon the whole record, be now determined.

2. The testimony seems most conclusively to negative the allegation of confinement, detention, deprivation of liberty, or even constraint.

3. Violet Maples is the mother of seven children, by different fathers. She is the servant of, and lives in the kitchen of the father-in-law of her agent, who prosecuted this case in the chancery court, and is a resident of the State of Alabama. She has no other ostensible business than that of cook, nor other means of supporting her children. Her position, employment, and character, offer no guaranty of the proper care and training of her son Boss. He is evidently wanted by her to be hired out to other parties.

4. Ambrick Maples, the grandfather, is apparently a respectable farmer, in comfortable circumstances, with the inclination to afford Boss a decent home, and some education.

5. Boss is now about eighteen years of age.   He does not wish to return to Alabama; prefers to remain where he is.

Conceding to the Chancellor a large discretion in cases of this sort, the impression is very decided, that he erred in this instance.   The doctrine is based upon reason and philosophy, that the welfare of the child will be consulted.   No inducement is perceived for the return of this boy, at his age; to his mother.   And  besides,  to send a boy of nearly full age, out of the State by force, when no good can result, is somewhat obnoxious.   From the evidence it is better for the boy where he is, than with his mother, who has no home to take him to. This  case  is  one,  where,  to  use  a  common  expression,  "it would be better to let well enough alone."

Without further elucidation, and with a reference merely to the authorities on the subject involved, the decree of the Chancellor will be reversed and the petition dismissed.  Code, §§ 1396, 1793;  Foster v. Simmoms,  6 How., 406 ;  Cocke v. Hannum, 39 Miss., 423 ;  Shelford, Mar. & Div., 677, 678 ; Rex v. Delavel, 3 Burr., 1436 ; 13 John., 418; 4 John. ch., 80 ; 31 Eng., C. L., 661 ;  Hurd on *Habeas Corpus*, 454, *et seq.;*  ib., 462 ; ib., 521 ; ib., 527 ; ib., 532 ; 2 Kent, 194 ; etc.

Ordered accordingly.