## BETTIE MOORE *v.* THOMAS F. CHRISTIAN.

1. **PARENT AND CHILD.** *Custody of child. Mother's right.*
   A widowed mother, though poor and dependent, is entitled to the custody of her thirteen-year-old son, notwithstanding he prefers remaining with a kind man, of good character and means, to whom his father contracted him.

2. **HABEAS CORPUS.** *Withholding custody defined.*
   To harbor a child absconding from his home, and forbid his mother using her parental authority to compel his return, is to withhold the custody of the child from the person entitled to it, within the meaning of sect. 1396 of the Code of 1871, notwithstanding the child has permission to leave if he wishes to do so, and he stays from inclination. *Maples* v. *Maples,* 49 Miss. 393, partly overruled.

APPEAL from the decision of Hon. LAFAYETTE HAUGHTON, Chancellor of the First Judicial District, on *habeas corpus.*

The case is stated in the opinion of the court.

*Newman Cayce,* for the appellant.

1. The mother, as against a stranger, has the legal right to the custody of her minor child. Hurd on Habeas Corpus, 453; *The Commonwealth* v. *Hamilton,* 6 Mass. 273; *Mercien* v. *The People,* 25 Wend. 64; *Paine* v. *Paine,* 4 Humph. 523; *Nickerson* v. *Nickerson,* 19 Wend. 16; *Rex* v. *De Mandeville,* 5 East, 220; 2 Kent's Comm. 205, 213, *et seq.*; *Dedham* v. *Natick,* 16 Mass. 135; *Ex parte Bailey,* 6 Dowl. P. C. 311. Our statutes clearly recognize the mother's right, and provide for its protection and enforcement. Code 1871, sects. 1202,

1203, 1232, 1793; Acts 1876, p. 32; Const. Miss., art. 1, sect. 13.

2. The infant's wishes cannot control in this case. *Foster* v. *Alston*, 6 How. (Miss.) 406. Nor the father's verbal gift to Christian. *The State* v. *Libbey*, 44 N. H, 321. Nor the mother's poverty, which is not a crime. *Maples* v. *Maples*, 49 Miss. 393.

Upon the facts of the case, Christian cannot successfully maintain that he is not withholding the custody of the boy from his mother.

*Blair & Clifton*, for the appellee.

1. Christian does not deprive the mother of her child. He uses no restraint. The boy is at liberty to leave at pleasure; but he prefers to remain. The illegal restraint is the foundation of the right to this remedy, and without that the writ of *habeas corpus* cannot be sustained. *Foster* v. *Alston*, 6 How. (Miss.) 406. Our statutes do not enlarge the remedy so as to change this rule. Acts 1876, p. 32; Code 1871, sect. 1396.

2. The boy wants to stay with Christian. To force him back to his mother would be depriving him of his liberty; and this, where Christian is every way fitted to care for him, and the mother, poor and dependent, in many ways unfit. *Maples* v. *Maples*, 49 Miss. 393; *Cocke* v. *Hannum*, 39 Miss. 423; 2 Kent's Comm. 194.

CHALMERS, J., delivered the opinion of the court.

Bettie Moore, the widowed mother of Frank Moore, a minor, brought this writ of *habeas corpus* against Thomas F. Christian, to recover possession of her son, whom she alleges is illegally detained in custody by said Christian. Christian answers that the boy is at his house of his own accord; that he (Christian) exerts no sort of restraint over him; and that he is at liberty to depart whenever he chooses. The testimony develops this state of facts. The father and mother of the boy had been laborers on the land of Christian. The father

died shortly before the suing out of the writ. Christian alleges that several years before his death he put the boy in his (Christian's) charge, saying that he might keep him until he attained majority. The mother says she does not believe that her husband ever entered into any such agreement, and that, if he did, it was without her knowledge or consent. It is certain that the boy went into Christian's charge when he was about ten years of age, and that he was about thirteen when this action was instituted. He avows his own desire to stay with Christian, stating that the latter treats him well, and has promised to give him a horse, saddle, and bridle if he will remain. When the mother called for her son, before the suing out of this writ, Christian told her that he could go with her if he desired to do so, but that she should not take him against his will. She says that Christian threatened to whip her if she attempted to compel her son to go with her. This he denies.

It is shown that Christian is a man of good character, and some property. The mother is very poor and illiterate, dependent upon her daily labor in the fields for the support of herself and five children, all of whom, save one, are younger than this son.

Two questions are presented by these facts: 1. Is the mother entitled to the custody of her child? 2. Has there been established such detention of the boy, on the part of Christian, as will support this writ?

Nature gives to parents that right to the custody of their children which the law merely recognizes and enforces. It is scarcely less sacred than the right to life and liberty, and can never be denied save by showing the bad character of the parent, or some exceptional circumstances which render its enforcement inimical to the best interests of the child.

Our statute-law provides for appointing guardians of the estates of minors, whether their parents are living or dead; but expressly forbids the appointment of guardians of their persons if either parent be alive, thus recognizing in the

broadest manner the parental right to their custody.    Code 1871, sect. 1202.

So, too, all officers and courts are forbidden to apprentice any minor without the consent of the parent, unless it be shown that the parent has failed or been unable to take charge of the child, or is of immoral habits.   Code 1871, sect. 1793.

No higher evidence could be afforded of the sanctity with which our law invests the parental right of custody, or rather recognizes and protects the right given by nature and by God. It is, indeed, held that this parental right must give way to the permanent interest of the child, if it be shown that the life, or health, or morals of the latter will be prejudiced, or his usefulness as a citizen seriously jeopardized, by remaining under the parental control; but it is not meant by this that the courts can sit in judgment upon the question whether a wealthy stranger can give to the child more worldly advantages than an indigent parent.    This would be to make poverty a crime, and to punish it by the bitterest of penalties.    In the case at bar, it is not shown, or attempted to be shown, that the mother is in any respect an improper person to control and govern her own offspring.    Nothing is alleged against her save her poverty and her dependent condition, and that would seem to furnish a reason rather in favor of than against her right to demand and obtain the control and the services of that one of her children who can aid her in rearing and supporting the others.

The boy, it is true, expresses a preference to remain with the appellee; but, while in doubtful cases the wishes of a child of this age will be sought, and to some extent be observed, we cannot for a moment agree that a boy of thirteen can be allowed, at pleasure, to abandon his filial duties, and select elsewhere a home more agreeable either to his desires or his worldly interests.    So to hold would simply be to offer a premium to the children of the poor to shirk the duties to which their station in life has called them, and to permit them, at the sacrifice of all the natural affections, to set about bettering

their condition, at a period of life when the law dedicates both their persons and their services to parental control.

But it is said that in this instance the father, in his lifetime, had contracted away his son, and that as it is to the father, rather than the mother, that the law awards the custody of the children, this contract will be enforced by the courts.  Conceding that there was in this case a contract, based upon a legal consideration and binding upon the father, — upon which we express no opinion, — it must, we think, be held to have terminated at his death.  If made at all, and if a valid contract at all, it was entered into without the knowledge or consent of the mother, and could not, therefore, divest her of that right to the custody of her son which arose upon the death of the father.

The father may appoint a testamentary guardian of the person or estate of his children, but he cannot, by contract with a stranger, bargain away the rights of the mother after his death.  The courts might, under such circumstances, refuse to restore the child to her, for good and sufficient reasons, springing out of her own character and the welfare of the child; but the objections to doing so must be based upon other considerations than her poverty, or the wishes of a boy of thirteen, seduced from filial duty by promises of presents or rewards.

We are of opinion that the mother, in this case, has shown herself entitled to the custody of her son.

Has a case of detention been made out against appellee? "The writ of *habeas corpus* shall extend to all cases of illegal confinement or detention whatever, by which any person is deprived of his liberty, *or in which the rightful custody of any person is withheld from the person entitled thereto.*" Code 1871, sect. 1396.

We have seen that the mother is entitled to the custody of her son in this case.  Is that custody withheld from her by appellee?  He says that the boy is at liberty to go if he pleases, but he admits that he has forbidden the mother to exercise her parental right of force and chastisement to compel

obedience to her wishes. He who harbors a child absconding from its home, and forbids the exercise of parental authority to enforce a return, does, within the meaning of the act, withhold the child from the custody of the person entitled to it.

Indeed, the mere harboring and employing of a child under such circumstances, is made by statute a criminal offence in this State, and would of itself perhaps justify a writ of *habeas corpus*. Acts 1876, p. 32.

In *Maples* v. *Maples*, 49 Miss. 393, this court refused to return a child, who was living with its grandfather, to its mother, who was shown to be an immoral woman. That far the decision is approved. In so far as it held that the conduct of the grandfather in refusing to permit the mother's agent to take possession of the child did not amount to a detention, it is overruled.

Reversed and remanded, with instructions to remand the child to the custody of the mother. Appellee to pay costs in both courts.