*Kinney & Ballou*, for plaintiff.

*A. S. Hartwell*, for defendant.

# IN THE MATTER OF THE APPLICATION OF TATSU AND OTHERS, FOR A WRIT OF HABEAS CORPUS.

SUBMITTED MARCH 16, 1897.     DECIDED MARCH 17, 1897.

JUDD, C.J., FREAR AND WHITING, JJ.

An application for a writ of *habeas corpus,* when made by a person other than the one whose relief is sought, should show either authority for making the application or sufficient reason for the absence of such authority; but the writ, if issued, will not be quashed merely because such showing does not appear in the application.

A decision by the proper officer that an alien is within one of the classes prohibited by Act 66 of the Prov. Gov't from landing in the Hawaiian Islands, is conclusive, subject only to appeal to the Collector General of Customs, and cannot be reviewed by the courts on *habeas corpus.*

The provisions of the treaty with Japan do not require that Japanese subjects be allowed counsel upon their examination or inspection under said Act.

The proceedings under said Act are of an executive, not judicial nature, and would not be void so as to entitle an alien to a release on *habeas corpus,* either from the fact that he was not allowed counsel or from the fact that the decision of the inspecting officer had not been announced to him.

OPINION OF THE COURT BY JUDD, C.J.

A petition by Tatsu and 347 others for a writ of *habeas corpus,* signed by S. M. Ballou (an attorney of this Court) "in behalf of the above named petitioners," and sworn to by Mr. Ballou was presented to the Chief Justice on the 10th March and a writ was ordered to be issued, returnable before the Supreme Court on the 15th, the day of the opening of the term. The petition alleges as follows:

"That on or about the 27th day of February, A. D. 1897, they arrived in Honolulu, Republic of Hawaii, on the steamship Shinshiu Maru, from Kobe, Empire of Japan, intending to locate and remain in the Republic of Hawaii, being as they are informed and believe and so charge the fact to be, qualified to enter and to locate in the said Republic of Hawaii under the treaty now existing between the Emperor of Japan and the Republic of Hawaii, and under the laws of the Republic of Hawaii.

"And your petitioners severally represent that they are not idiots, insane persons, paupers, vagabonds, criminals, fugitives from justice, persons suffering from a loathsome or dangerous contagious disease, stowaways, vagrants, nor persons without visible means of support.

"And your petitioners further allege that they severally have *bona fide* possession of not less than fifty dollars in money, and other visible means of support, and that upon their arrival in Honolulu as aforesaid they were severally examined by a duly authorized inspector touching their object and purpose in coming to the Hawaiian Islands, and their means of support, and then and there exhibited to said inspector money of the value of

not less than fifty dollars, which money was then and there in their *bona fide* possession.

"And your petitioners further allege that ever since their arrival in the Republic of Hawaii as aforesaid they have been and are now unjustly restrained and deprived of their several liberties, which, as they are informed and believe, and so charge the fact to be, they are entitled to enjoy under and by virtue of the said treaty now existing between the Emperor of Japan and the Republic of Hawaii, by Jas. B. Castle, Collector General of Customs, and by his deputies, servants and agents, under the pretence that your petitioners are vagrants and persons without visible means of support, and other pretences to your petitioners unknown.

"And your petitioners further allege that the said Jas. B. Castle threatens to deport your petitioners and to forcibly send them to Japan by the steamship Shinshiu Maru, and will so deport your petitioners unless so restrained by an order of this court, whereby your petitioners are threatened with immediate and irreparable injury." (Then follows the usual prayer.)

The return made by the Collector General of Customs, among other things, alleges that "it does not appear on the petition that S. M. Ballou had any authority to petition for any of the said persons for whom a writ of *habeas corpus* has been asked." The traverse to the return, also signed by Mr. Ballou, alleges that "all access to said petitioners and all communication from them being purposely shut off by respondent, no direct authorization from them was possible, but that S. M. Ballou being retained with W. A. Kinney by friends of the petitioners on shore to bring this suit, has assumed to act in their behalf as aforesaid in accordance with law."

It will be seen that the petitioners are the Japanese immigrants in question, and yet they do not sign nor swear to the petition. If the petition is intended to be Mr. Ballou's on behalf of the Japanese who are alleged to be restrained of their liberty, he should have made himself the petitioner. Our statute allows a petition for the issuance of a writ of *habeas corpus* to be

"signed by the party for whose relief it was intended, or by some person in his behalf." So far as we know, the authority of the person to make a petition in behalf of a party alleged to be in restraint has never been questioned or demanded to be known. By the common law a mere stranger had no right to come into court and ask that a party who makes no affidavit and who is not suggested to be so coerced as to be incapable of making one, may be brought up on *habeas corpus*. But it is enough that the application, by whomsoever presented, shows probable ground to suspect that the person in whose behalf it is made is suffering an involuntary and wrongful restraint or imprisonment. No legal relation is now held to be necessary between the prisoner and the applicant for the writ. This is the view laid down by Hurd on Habeas Corpus, p. 211.

The failure to state the fact that the person for whom relief is sought is under disability through coercion to make or authorize the application, would not be sufficient ground, after the issuance of the writ, upon which to dismiss the writ or remand the party alleged to be wrongfully restrained, yet it is desirable to put this allegation in the petition. The writ having issued, the presumption is that the Justice was satisfied that either the application was authorized or that there was reasonable ground to suspect that the persons in whose behalf the application was made were suffering involuntary and wrongful restraint.

The return of the Collector General is as follows:

"Now comes James B. Castle, Collector General of Customs of the Hawaiian Islands, and for a return to the writ served upon him respectfully shows to this honorable court as follows:

"First. He admits that persons answering to the names set forth in said petition and in said writ were in his custody at the times therein alleged, and he verily believes them to be the persons so described; and he here brings them and each of them before this honorable court, as the said writ directed. And the said respondent hereby shows the cause of the detention of the said petitioners to be as follows:

"1. That they are natives of the Empire of Japan, and aliens and foreigners.

"2. That they arrived in the port of Honolulu on board a steam vessel called the 'Shinshiu Maru,' on or about the first day of March, 1897. That said petitioners were removed to the quarantine station for the purpose of performing the quarantine duties, and that while there they were subjected to the inspection of Frank B. McStocker, Esq., deputy of the Collector General of Customs, for the purpose of ascertaining their qualification to enter this country. That upon such examination the said F. B. McStocker decided that the petitioners, each and every one of them, were not qualified to land in this country. That said F. B. McStocker has reported to him that the petitioners, each and all of them, are aliens, and that none of them possess the qualifications required by law to authorize them to land in the Hawaiian Islands.

"Whereupon it was decided that said petitioners, each and all of them, were not entitled to enter the Hawaiian Islands; and that they should be held to await the return of the steamer that they might be deported."

A lengthy traverse to the return was presented for the petitioners by Mr. Ballou, which substantially denies that any legally conducted examination of the right of these Japanese to land was made by the Deputy Collector, or that any legal decision thereon was made. It is claimed in argument that the court should inquire into the proceedings in order to ascertain if the statute relating to the landing of aliens in the Hawaiian Islands (Act 66 of the Laws of 1894) was complied with. Counsel urge that the decision alleged in the return is not final because it was not communicated to these Japanese, and therefore they have had no opportunity to appeal therefrom to the Collector General as by the statute allowed. They also claim that the decision is not binding because no opportunity was allowed these Japanese of consulting counsel, and that this was in derogation of their rights under the treaty of Hawaii with Japan, which provides that Japanese subjects "may remain and reside in" the

Hawaiian Islands, "enjoying at all times the same privileges" as may be granted "to the citizens or subjects of any other nation," one of which privileges is, as set forth in the treaty with Spain, for instance, that "they shall have free and easy access to the courts of justice in the pursuit and defense of their rights, in every instance and degree of jurisdiction established by the laws," and "shall be at liberty, under any circumstances, to employ lawyers, advocates or agents from any class whom they may see fit to authorize to act in their name." These treaty provisions, as it seems to us, do not require that aliens be allowed counsel in cases of examination under the immigration act in question, for the reason that they refer only to persons while residing in the Hawaiian Islands, and not to those who, like the aliens in question, have not yet landed in these islands, and also for the reason that these treaty provisions apply only to judicial proceedings. As we shall see later on, the proceedings under the Act in question to be conducted by the Deputy Collector are of an executive and not judicial nature. It is not contended here that the Act in question is in conflict with the treaty with Japan, this Act making no discrimination between subjects of Japan and those of other countries.

There being nothing in the treaty to invalidate the Act itself, or the action taken by the Deputy Collector, it remains to consider whether the statute has been complied with. Upon this point we are greatly assisted by the decisions of the Supreme Court of the United States, made under an Act of Congress passed on March 3, 1891, from which our statute was for the most part taken. Both statutes exclude certain classes of undesirable persons, and confer upon certain executive officers the duty of inspecting all alien passengers and deciding upon their right to land in the respective countries, that is, the authority to pass upon the question whether they are within the prohibition.

In *Nishimura Ekiu v. United States*, 142 U. S. 651, the court say "that the legislative body may, if it sees fit * * * authorize the courts to investigate and ascertain the facts on

which the right to land depends. But, on the other hand, the final determination of those facts may be entrusted by Congress to executive officers; and in such a case, as in all others in which a statute gives discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to re-examine or controvert the sufficiency of the evidence on which he acted. *Martin v. Mott*, 12 Wheat. 19, 31; *Philadelphia & Trenton Railroad v. Stimpson*, 14 Pet. 448, 458; *Benson v. McMahon*, 127 U. S. 457; *In re Oteiza*, 136 U. S. 330. It is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law, shall be permitted to enter, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government. As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law. *Murray v. Hoboken Co.*, 18 How. 272; *Hilton v. Merritt*, 110 U. S. 97." * * * *

"By Section 8 (corresponding to Sec. 3 of the Hawaiian statute), 'the proper inspection officers' are required to go on board any vessel bringing alien immigrants and to inspect and examine them, and may for this purpose remove and detain them on shore, without such removal being considered a landing; and 'shall have power to administer oaths, and to take and consider testimony touching the right of any such aliens to enter the United States, all of which shall be entered of record;' 'all decisions made by the inspection officers or their assistants touching the right of any alien to land, when adverse to such right, shall be final unless appeal be taken to the Superintendent of Immigration, whose action shall be subject to review by the Secretary of the Treasury;' and the Secretary of the Treasury may prescribe rules for inspection along the borders of Canada,

British Columbia and Mexico, 'provided that not exceeding one inspector shall be appointed for each customs district.'

"It was also urged that Hatch's (the inspector's) proceedings did not conform to Section 8 of the Act of 1891, because it did not appear that he took testimony on oath, and because there was no record of any testimony or of his decision. But the statute does not require inspectors to take any testimony at all, and allows them to decide on their own inspection and examination the question of the right of any alien immigrant to land. The provision relied on merely empowers inspectors to administer oaths and to take and consider testimony, and requires only testimony so taken to be entered of record.

"The decision of the inspector of immigration being in conformity with the Act of 1891, there can be no doubt that it was final and conclusive against the petitioner's right to land in the United States. The words of Section 8 are clear to that effect, and were manifestly intended to prevent the question of an alien immigrant's right to land, when once decided adversely by an inspector, acting within the jurisdiction conferred upon him, from being impeached or reviewed in the courts or otherwise, save only by appeal to the inspector's official superiors, and in accordance with the provisions of the Act."

In *Lem Moon Sing v. United States*, 158 U. S. 538, the court say, "the contention is that while, generally speaking, immigration officers have jurisdiction under the statute to exclude an alien who is not entitled under some statute or treaty to come into the United States, yet if the alien is entitled, of right, by some law or treaty, to enter this country, but is nevertheless excluded by such officers, the latter exceed their jurisdiction; and their illegal action, if it results in restraining the alien of his liberty, presents a judicial question for the decision of which the courts may intervene upon a writ of *habeas corpus*.

"That view, if sustained, would bring into the courts every case of an alien who claimed the right to come into the United States under some law or treaty, but was prevented from doing so by the executive branch of the government. This would

defeat the manifest purpose of Congress in committing to subordinate immigration officers and to the Secretary of the Treasury exclusive authority to determine whether a particular alien seeking admission into this country belongs to the *class* entitled by some law or treaty to come into the country, or to a *class* forbidden to enter the United States. Under that interpretation of the Act of 1894, the provision that the decision of the appropriate immigration or customs officers should be *final*, unless . reversed by an appeal to the Secretary of the Treasury, would be of no practical value."

See also *Wong Wing v. United States*, 163 U. S. 228, and *Fong Yue Ting v. United States*, 149 U. S. 698.

By this reasoning it appears that the action of the Deputy Collector is not judicial, but executive, and also that the decision is final and conclusive and cannot be reviewed by the court.

These principles have been repeatedly declared by the highest court of the United States, and we have no reason to doubt their correctness. They may be summed up as follows: "When the law has confided to a special tribunal the authority to hear and determine certain matters in the course of its duties, the decision of that tribunal within the scope of its authority is conclusive upon all others." *U. S. v. Chung See,* 76 Fed. Rep. 954.

It is contended that the decision of the Deputy Collector of Customs is not final because not announced to the petitioners, so that they might appeal. Having held that the decision refusing to admit them to land is an executive function, formal notice of the decision to the petitioners is not essential to its validity. We as a court do not know whether the decision may not have been announced to them by this time. The failure to announce the decision is not ground to discharge them from the restraint they are undergoing. In a case, *In re Chin Yuen Sing*, 65 Fed. Rep. 571 (1894), a United States Circuit Judge held that the Act of 1891 "left nothing for the court to inquire into, save only whether relator is an alien, and whether the Collector has made a decision. On this latter point, the return, in which he states that he has decided adversely to admission, is conclu-

sive.   Even if he had not so decided when the writ was applied for, the signing of such a return is itself a decision."

The decision of the Deputy Collector cannot be inquired into by this court.

The petitioners are remanded.

*Kinney & Ballou*, for petitioners.

*H. E. Cooper, Attorney-General ad interim; W. R. Castle, J. A. Magoon* and *W. S. Edings*, for respondent.