IN THE MATTER OF THE PETITION OF TAI KEE FOR A WRIT OF MANDAMUS TO JAMES A. KING, Minister of the Interior.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED SEPTEMBER 25, 1899.    DECIDED OCTOBER 30, 1899.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE STANLEY, IN PLACE OF JUDD, C.J., ABSENT.

The provision of the statute (Act 38, Laws of 1898) "that no license shall be issued for any lodging or tenement house, hotel, boarding house or restaurant to be established or maintained in any location which in the opinion of the Executive Council is unsuited for the purpose, or which the Executive Council believes to be objectionable," is void, for the reason that it subjects the constitutional rights of persons to the arbitrary discretion of the Executive Council and contains nothing to guide or control the exercise of its discretion.

OPINION OF THE COURT BY FREAR, J

This is a petition for a writ of mandamus to compel the respondent, J. A. King, Minister of the Interior, to issue to the petitioner, Tai Kee, a license to keep a lodging house. The parties and the lodging house in question are the same as in the case of *Tai Kee v. Minister of the Interior*, 11 Haw. 57, and the allegations of the petition are much the same. In that case the respondent contended that the statute gave him discretionary power to grant or refuse a lodging house license but we held that the statute made it his duty to grant the license upon the applicant's compliance with the terms of the statute. The provisions of the statute as it then stood are set forth in the decision in that

case. Since then the legislature has amended the statute by providing (Act 38, Laws of 1898) "that no license shall be issued for any Lodging or Tenement House, Hotel, Boarding House or Restaurant to be established or maintained in any location which in the opinion of the Executive Council is unsuited for the purpose, or which the Executive Council believes to be ╷objectionable." Acting under this provision, the Executive Council, to which petitioner's application for a license was referred by the respondent, passed the following resolutions: "Resolved, That in the opinion of the Executive Council, the maintenance of a lodging and tenement house by Tai Kee on the corner of Beretania and Pensacola streets—such as he has heretofore carried on in said locality—is objectionable" ╷and "that the Executive Council recommend to the Minister of the Interior that we deny the application of Tai Kee for a renewal of his license to maintain a lodging and tenement house at the corner of Beretania and Pensacola Streets." This action of the Executive Council is the only ground relied upon by the respondent for his refusal to issue the license.

Assuming that the resolutions are in conformity with the statute (which is not altogether clear) the sole question to be decided is whether that provision is constitutional.

The decision in the former case was based upon the construction of the statute but the court found that it could not very well avoid considering to some extent the question of the constitutionality of the statute and it was in part to avoid holding the statute unconstitutional that the court construed it to be mandatory. It is evident from the reasoning in that case that if the statute could have been constructed only as conferring discretionary power upon the Minister to grant or refuse the license, it would have been held unconstitutional. A distinction was drawn between occupations which may be regarded as harmful or dangerous in themselves, such as that of selling intoxicating liquors, which was involved in the case of *Bradley v. Thurston*, 7 Haw. 523, and those which, like that of keeping a lodging house, involved in the present case, are necessary to the welfare or con-

venience of the community and which are harmful or dangerous, if at all, only because of the particular way in which they may be conducted. In the former no person has an absolute right to engage; in the latter all citizens have a right and an equal right to engage. The latter are not subject to the same degree of control as the former. The former may be regulated or restricted to any extent even to the extent of prohibition; the latter may be regulated only to a reasonable extent and with reference to the evils to be remedied or avoided. In regard to the latter the court said: "The Legislature itself could not constitutionally impose unreasonable or arbitrary restrictions upon such pursuits; much less could it delegate such power to any other person or body. It may itself impose reasonable conditions or it may place considerable discretionary power in executive officers, but in the latter case there should be something in the statute to guide or control the action of the officers."

The provision of the statute now in question in terms delegates to the Executive Council arbitrary power with reference to the location of lodging houses, and contains nothing to guide or control the action of that body in this respect. It is clearly unconstitutional. In addition to the authorities, both Hawaiian and American, relied on in the former case, the following, cited by counsel for the petitioner, are referred to as bearing closely upon the present case:

In *The City of Richmond v. Dudley*, 129 Ind. 112, an ordinance purported to confer power on the Common Council to grant permission to an applicant to keep inflammable or explosive oils in quantities greater than five barrels at a time, "if the location," among other things, should be "deemed suitable and proper." The ordinance was held invalid, the court saying among other things: "Language better calculated to enable the Common Council to arbitrarily control the business, without any fixed or known rules, can not well be imagined. The business of keeping, storing and dealing in such oils is a legitimate business, and every citizen has an inherent right to engage in the business upon equal terms with any other citizen."

In *State v. Tenant,* 110 N. C. 609, an ordinance which provided that no person should erect within the city limits any house, &c., without having first obtained permission from the Aldermen, was held unconstitutional and void on the ground that it did not prescribe a uniform rule of action but made the enjoyment of one's own depend upon the arbitrary discretion of the governing authorities.

In order to avoid the effect of the reasoning in the former *Tai Kee* case, three arguments are presented on behalf of the respondent. First, that the Legislature must be deemed to have intended by the Act of 1898 now in question to put the occupation of keeping a lodging house in the category of occupations harmful in themselves, and so to take this case out of the decision in the former *Tai Kee* case and bring it within the decision in *Thurston v. Bradley, supra.* But the Legislature did not show any such intention, and it could not constitutionally declare an occupation of this kind to be harmful or dangerous in itself, so as to enable itself to enact a law of this kind in regard to it. Secondly, it is contended that the statute should be held constitutional if possible and that in order to hold it so it should be presumed that the Legislature intended that the Executive Council should act upon legal grounds only and also that the Executive Council did act upon legal grounds only and not arbitrarily. But it is not sufficient that the Executive Council may act fairly under the statute or even that it has acted fairly in any particular case. The statute is unconstitutional because by its terms the Executive Council may act arbitrarily however unlikely it may be to do so. It is contended, thirdly, that the legislature has made the Executive Council a judicial tribunal for the purpose of deciding upon the location of lodging houses and that the decisions of that tribunal are final and cannot be inquired into by the courts. The former *Tai Kee* case is cited to show that the provision of the statute which requires the applicant to first obtain a certificate of the Board of Health in regard to certain matters, would be upheld, and, if so, it is argued, the requirement that the applicant shall first obtain the approval of the Executive Council should be

upheld. But the action of the Board of Health is controlled within reasonable limits (or must be in order to be constitutional) by the provisions of the statute, while the action of the Executive Council is not controlled at all. The case of *In re Tatsu*, 10 Haw. 701, is cited to show that the decision of the proper executive officer that an alien is within one of the classes prohibited by the statute from landing is conclusive and cannot be reviewed by the courts, and, if so, it is argued, the Executive Council may be given power to make final decisions in respect to the location of lodging houses. But the decision of an immigration officer relates to an alien who is not in the country and has no constitutional right to enter, while the applicant for a license to keep a lodging house has or may have a constitutional right to keep a lodging house, subject only to reasonable restrictions. If the person desiring to land were a citizen, the decision of the immigration officer could not be made final, because the citizen has a constitutional right to land, although he may be required to submit to reasonable regulations prescribed by law. We may add that the immigration officer acts in an executive, not a judicial capacity.

Since this case was submitted the respondent has died and his successor in office has been appointed. The Attorney-General is of the opinion that since the action is against the respondent in his official capacity it will be unnecessary to suggest his death on the record and that the judgment will be binding on his successor, and, no objection being made on either side, we make none ourselves and file the decision.

The judgment of the Circuit Judge for a peremptory writ of mandamus directing the respondent to issue the license to the petitioner is affirmed.

*Humphreys & Hankey* for the petitioner.

*Attorney-General Cooper* and *H. P. Weber* for the respondent.