## TERRITORY OF HAWAII *v.* SING HIGH.

RESERVED QUESTION FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED NOVEMBER 1, 1909.         DECIDED NOVEMBER 17, 1909.

HARTWELL, C.J., WILDER AND PERRY, JJ.

STATUTE—*construction.*

It is not clear that Sec. 1418 I of Act 96 S. L. 1907, relating to laundry licenses, gives power to the treasurer to impose conditions for granting such license but if it does the remainder of the act is not invalid provided it properly requires a certificate by the board of health.

STATUTE—*constitutional.*

The act is not unconstitutional in its requirement of a certificate by the board of health that the proposed location for a laundry is suitable.

OPINION OF THE COURT BY HARTWELL, C.J.

(Wilder, J., Dissenting.)

The defendant was charged with carrying on a laundry business without obtaining a license therefor which is required by Sec. 1418 I, Act 96 S. L. 1907. The defendant demurring to

the charge on the ground that the act denies him equal protection of the laws in contravention of the fourteenth amendment, the court reserved the question whether the demurrer should be sustained or overruled. The act provides that the treasurer may issue licenses "to maintain and operate a laundry, dyeing or cleaning or dyeing and cleaning works upon such conditions as to location and otherwise as shall be set forth in the license," and that "such license shall not be issued except upon a certificate of the Board of Health setting forth that the location at which it is proposed to operate such laundry, dyeing or cleaning or dyeing and cleaning works is suitable for the purpose. The annual fee for a license for either a laundry, dyeing or cleaning or dyeing and cleaning works shall be Twenty-five Dollars." The defendant claims that the act "vests an unrestrained, unguided discretion both in the Treasurer and the Board of Health, to impose such purely arbitrary and burdensome conditions upon one who may desire to conduct the necessary and legitimate business of operating a laundry, which may not be applied to others similarly circumstanced, and which may absolutely prohibit him from carrying on his business, while others may be permitted to do so," and that "this case seems to be clearly within the rule laid down in *Tai Kee's* case, 12 Haw. 164, and cases there cited."

The act was probably not intended to authorize the treasurer to impose conditions for granting an application for a laundry license and it is only if such meaning is clear that the act ought to be declared invalid; but even if such power were given to the treasurer the remainder of the act would not therefore be invalid provided the certificate of the board of health is properly required.

In the *Tai Kee* case, 12 Haw. 164, it was held that a statute giving the minister of the interior power to refuse a license for a lodging house "in any location which in the opinion of the Executive Council is unsuited for the purpose, or which the

Executive Council believes to be objectionable" was unconsti-
tutional because it "delegates to the Executive Council arbitrary
power with reference to lodging houses and contains nothing
to guide or control the action of that body in this respect." The
court remarked (p. 168), "But the action of the Board of
Health is controlled within reasonable limits, or must be in
order to be constitutional by the provisions of the statute, while
the action of the Executive Council is not controlled at all."
The act under consideration in the *Tai Kee* case, 11 Haw. 57
(Act 64 S. L. 1896), required the applicant for a lodging or
tenement house license to secure from the board of health a
certificate setting forth that an agent of the board had examined
the house supposed to be used for the purpose and that it was
in good sanitary condition and suitable to be used for the pur-
pose, and stating the number of persons which by law could
be lodged therein.    It was held that one who had complied
with the requirement was entitled to a license.    The act now
under consideration does not give to the board any power on
the subject but requires its certificate that the location is "suit-
able for the purpose."    The board has "general charge, over-
sight and care of the public health" (Sec. 988 R. L.) and the
duty to "examine into all nuisances, sources of filth and sick-
ness" and cause the same "to be prevented" as well as "destroy-
ed or removed."    (Sec. 994.)    This general oversight and duty
cannot be reduced to precise terms, for instance, what shall or
shall not be a nuisance injurious to the public health is left
to the board to determine.    If like power were given to the
treasurer it would be so incongruous with his official duties as
to suggest capricious and unjust conduct such as would not be
imputable to the board of health whose official duty in respect
of certifying to laundry sites would presumably be done in per-
formance of its general duty to care for the public health.    A
statutory provision would not be inappropriate requiring the
board of health to see that none but suitable locations for laun-

dries be licensed, the evident intent of such statute being that the locations conform to sanitary conditions.

*King* v. *Tong Lee*, 4 Haw. 335, held that an act was valid which prohibited public laundry business in Honolulu except in laundries erected by the minister of the interior and under the supervision and control of the board of health. The court remarked that under the general law giving the board power "to enter upon any land, building or vessel for the purpose of examining and preventing any nuisance or source of filth" it had "all the power over this business of washing  *  *  *  to enable it to carry out its functions as guardians of the public health;" and that laundries "are not manifestly and palpably nuisances. With proper drainage or sewerage whereby to dispose of the contaminated water and soapsuds, a laundry is far from being unwholesome or capable of affecting the public health. The want of sewerage in this town of Honolulu was undoubtedly the ground for the enactment of this law. The proper disposition of the contaminated water from either public or private laundries is a legitimate matter for the regulation of the Board of Health." But the court held that the object of the act, "however injudiciously expressed, is plainly to repress what in the opinion of the Legislature tends to the dissemination and propagation of disease."

While laundries may not be "manifestly and palpably nuisances" and with proper attention to sewerage and drainage they may not per se be "unwholesome or capable of affecting the public health," they may be injurious to the health of persons residing near them for clothing not disinfected is capable of carrying germs of disease, especially in an epidemic, and the risk of their being sprayed as in *Territory*, v. *Ah Choy and Ah Tuck*, 17 Haw. 331, would render their proximity unsafe in a sanitary point of view.

We see no reason why the legislature could not properly regard a laundry as liable to be harmful to the public health and

not in the same category as a lodging house, nor why the suitableness of its location is not appropriately left for the board of health to determine. If at any time the board in determining such matters should go outside of its legitimate functions in caring for the public health and act arbitrarily it could be required to grant the certificate.

The demurrer should be overruled.

*F. W. Milverton, Deputy City and County Attorney (J. W. Cathcart, City and County Attorney,* with him on the brief) for plaintiff.

*A. S. Humphreys* for defendant.

### DISSENTING OPINION OF WILDER, J.

There is a clear distinction between occupations which may be regarded as harmful or dangerous in themselves, such as that of selling intoxicating liquors, and those which, like keeping a lodging house or doing a laundry business, are necessary to the welfare or convenience of the community, and which are harmful or dangerous, if at all, only because in the particular way in which they may be conducted. In the former no person has an absolute right to engage; in the latter all persons have an equal right to engage. The former may be regulated or restricted to any extent even to the extent of prohibition; the latter may be regulated only to a reasonable extent and with reference to the evils to be remedied or avoided. Where discretionary powers are placed in executive officers there should be something in the statute to guide or control the action of the officers. *Tai Kee* v. *Minister,* 11 Haw. 57, 63; 12 Haw. 164, 165.

In the present case the statute provides that one desiring to operate a laundry shall be unable to procure a license therefor without a certificate of the board of health that the location at which it is proposed to operate such a laundry is suitable for the purpose. Thus it is within the arbitrary power of the board of health to say that the proposed location of a laundry

on King street is suitable while one on Fort street is not and thus allow a license to issue or not as it sees fit. Furthermore, there is nothing in the statute to prevent the board of health from saying to one person who desires to operate a laundry on one street that his location is suitable and to another who desires to operate on the same street that his location is not suitable. As I read the statute it contains nothing to guide or control the action of the board of health in regard to the suitability of a location.

It is urged that the court in the first *Tai Kee* case in 11 Haw., at p. 62, practically upheld such a provision in regard to lodging houses. The statute there required as a condition for obtaining a license that the applicant procure a certificate from the board of health certifying that the premises are in good sanitary condition and suitable to be used for the desired purpose. In that case then there was something in the statute to control or guide the action of the board of health, that is, that the building desired to be used as a lodging house should be in good sanitary condition and consequently suitable for the purpose. If it was not in good sanitary condition the applicant could make it so and then be entitled to the certificate. If the board of health had power in that case to arbitrarily withhold the certificate because in its opinion it was not suitable to have a lodging house on any particular street, regardless of any sanitary reason, it would be practically like the case at bar. I fail to see what the location of a laundry has to do with any evil to be remedied in connection with the carrying on of such a business. There are many places in Honolulu which without doubt would be regarded as unsuitable locations for laundries simply from an aesthetic standpoint, or because they were to be operated by orientals, or on account of other reasons not connected with sanitation, and which would be within the power of the board of health to so hold, and yet I think it is clear the legislature has no power to allow the board of health to withhold a certificate on such grounds.

SUPREME COURT OF HAWAII.

Territory v. Sing High, 19 Haw. 628.

It should be borne in mind that the washing of clothes in connection with the laundry business can in any event only be carried on in the places designated under chapter 88 R. L. as amended. And it is the washing which has been heretofore regarded as the means of spreading disease. As pointed out in *King* v. *Tong Lee*, 4 Haw. 335, 338, "Laundries are necessary in every country, and the greater the population the greater the number. They are not manifestly and palpably nuisances. With proper drainage or sewerage whereby to dispose of the contaminated water and soapsuds, a laundry is far from being unwholesome or capable of affecting the public health. The want of sewerage in this town of Honolulu was undoubtedly the ground for the enactment of this law. (Ch. 88 R. L.) The proper disposition of the contaminated water from either public or private laundries is a legitimate matter for the regulation of the board of health." "The laundry business, like the lodging house business, is not harmful or dangerous in its nature." *Tai Kee* v. *Minister*, 11 Haw. 57, 63.

It is suggested that the statute should be held constitutional if possible and that in order to hold it so it should be presumed that the legislature intended that the board of health should refuse a certificate for sanitary reasons only. That same argument in regard to the executive council was made in *Tai Kee* v. *Minister*, 12 Haw. 164, 167, and this court answered it as follows: "But it is not sufficient that the executive council may act fairly under the statute or even that it has acted fairly in any particular case. The statute is unconstitutional because by its terms the executive council may act arbitrarily however unlikely it may be to do so."

It is further suggested that, from the fact that the board of health as such is designated as the body to issue a certificate that the proposed location of a laundry is suitable, thus giving the power to refuse a certificate if in its opinion the location is not suitable, the statute should be construed to mean that the

certificate could only be refused if the location was unsuitable on account of sanitary reasons. The argument is that this follows from the general powers of the board of health in effect constituting it the guardian of the public health. The answer is, in the first place, that the legislature has not indicated in the statute that the suitability of the proposed location depended on sanitation, and, in the second place, that the board of health already had all the power necessary to regulate laundries if so conducted as liable to be dangerous to the public health. Chapters 78, 79 and 88 R. L. Furthermore, it appears that not only in the case of a laundry must the location thereof be suitable in the opinion of the board of health but also in case of a dyeing or cleaning or dyeing and cleaning works. Certainly in the last three cases whether a proposed location was suitable would not depend on anything to do with sanitation—no more than in case of a clothing store or a tailor shop. Consequently, to my mind, the legislature in using the word "suitable" did not intend to confine it to sanitation.'

In *The City of Richmond* v. *Dudley,* 129 Ind. 112, an ordinance purported to confer power on the common council to grant permission to an applicant to keep inflammable or explosive oils in quantities greater than five barrels at a time, "if the location," among other things, should be deemed "suitable and proper." The ordinance was held invalid, the court saying, among other things, "Language better calculated to enable the common council to arbitrarily control the business, without any fixed or known rules, can not well be imagined. The business of keeping, storing and dealing in such oils is a legitimate business, and every citizen has an inherent right to engage in the business upon equal terms with any other citizen. * * It seems from the foregoing authorities to be well established that municipal ordinances placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct or business;

and must admit of the exercise of the privilege by all citizens alike, who will comply with such rules and conditions and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities, between citizens who will so comply."

According to the definitions in Webster's and the Century dictionaries "suitable" means fitting, capable of suiting, appropriate. *White* v. *U. S.*, 69 Fed. 93.

To strike out of the statute all reference to the location of a laundry would necessitate holding the rest of the statute invalid.

I dissent from the opinion of the majority.