## TERRITORY *v.* W. C. ACHI.

### No. 1634.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. J. R. DESHA, JUDGE.

ARGUED MARCH 12, 1926.                    DECIDED APRIL 8, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

MUNICIPAL CORPORATIONS—*ordinances—invalidity.*

> Ordinance No. 97 of the City and County of Honolulu, making it unlawful for any owner to subdivide land "for the purpose of sale of building lots therein" without the consent of the mayor and the board of supervisors, containing no rule of action or standard for the determination by the mayor or the board of applications for such subdivisions and leaving such determination to the uncontrolled discretion of the mayor and the board, was beyond the power of the board to enact and is void.

The defendant was convicted and sentenced under a charge of violating the provisions of ordinance No. 97 of the City and County of Honolulu "in that he did &ast; &ast; &ast; sell to" a person named "Lot No. 1, Gulick Tract, Third Series, said lot being in an addition or subdivision in said city, contrary to the provisions of said ordinance." Prior to trial he demurred to the charge on the ground, among others, that the ordinance named "is null and void because the board of supervisors &ast; &ast; &ast; had no power or authority to make such ordinance;" and the demurrer was overruled. The case comes to this court by writ of error.

The portions of ordinance No. 97 material to the consideration of this case are as follows:

"Section 382.    Consent of City and County to Subdivision—Plan. Any person, firm or corporation, the owner of, or possessor of any interest in, land, desiring to lay out an addition in the City and County of Honolulu or to subdivide land within said City and County for the purpose of sale of building lots therein, shall submit to the Mayor and Board of Supervisors a plat of the addition or subdivision desired, showing the location of all sidewalks, curbs, streets, avenues and alleys therein, as desired, and their relation to existing sidewalks, curbs, streets, avenues and alleys over adjacent lands, together with written specifications of the materials and the proposed kind and method of construction to be used in the construction of said sidewalks, curbs, streets, avenues and alleys in said addition or subdivision. Said plat shall be accurately drawn to scale and shall have all dimensions of sidewalks, curbs, streets, avenues and alleys and lots plainly marked thereon.

"The Mayor and Board of Supervisors may, if they deem it for the convenience of the inhabitants of said City and County and the public, grant to such person, firm or corporation, by resolution, the right to lay out such addition or subdivision according to said plat and said proposed specifications of materials, method and

kind of construction of the proposed sidewalks, curbs, streets, avenues and alleys in said addition or subdivision, or may modify said plat and said specifications in such manner as to them may be deemed best for the public interest.

"Section 383.    Streets, Sidewalks, Etc., Constructed Before Sale of Lots.    After the approval of said plat and said specifications as submitted or modified, and before it shall be lawful to dispose of or offer for sale any lot or tract of land in said addition or subdivision, such person, firm or corporation shall cause the sidewalks, curbs, streets, avenues and alleys as they appear on the approved plat of said addition or subdivision to be accurately surveyed and all street lines marked on the ground by monuments set firmly in the ground and protected by cast iron monument frames and covers, and shall lay and construct in accordance with the specifications approved by said Board of Supervisors all sidewalks, curbs, streets, avenues and alleys set forth in said plat as approved by the Board of Supervisors.

"Monuments marking street lines shall be properly coordinated to Government Survey Triangulation Stations and the true azimuths and distances between them marked on said plat.    Said plat shall be filed in the office of the City and County Engineer.

"Section 384.    Unapproved Subdivision, Etc., Illegal. It shall be unlawful for any person, firm or corporation to lay out an addition or subdivision in the City and County of Honolulu, or subdivide any tract of land within said City and County, for the purpose of the sale of building lots therein, without complying with the provisions of Sections 382 to 385 inclusive.

"It shall be unlawful for any owner or other person to sell or offer for sale any lot or tract of land in any addition or subdivision in the City and County of Honolulu hereafter platted, which shall not be laid out, platted, and all sidewalks, curbs, streets, avenues, and alleys constructed in conformity with the provisions of Sections 382 to 385 inclusive.

"Section 385.    No Acceptance of Streets in Unapproved

Subdivisions. The Board of Supervisors of the City and County of Honolulu shall not take over, receive by dedication, or otherwise, or do any repair or construction work upon or in any way accept as public highways any streets, avenues or alleys in any addition or subdivision hereafter opened or platted in the City and County of Honolulu, except upon a compliance with the provisions of Sections 382 to 385 inclusive.

"Provided, however, that the grant to any person, firm or corporation, by resolution, of the right to lay out such addition or subdivision according to said plat and said specifications, as submitted or amended, shall not be construed to operate as an acceptance or adoption of such sidewalks, curbs, streets, avenues and alleys by the Board of Supervisors."—Revised Ordinances, Honolulu, pp. 151 and 152.

A later section provides that any person violating any of the foregoing provisions shall be deemed guilty of a misdemeanor and shall upon conviction be punished by a fine.

On behalf of the Territory it is contended that the authority to enact this ordinance is to be found in R. L. 1925, section 1738,—in this connection reference being also made, in the brief, to sections 1894, 1897, 1898, 1899, 1900 and 1901. In none of these sections is there to be found a grant of the power in question or any semblance of such grant unless it be in section 1738.

Section 1738 provides that, "subject to the provisions, limitations and restrictions in this charter contained, the board of supervisors shall have power: (1) to make and enforce within the limits of the city and county of Honolulu all necessary ordinances covering all local police matters;" (2) with certain exceptions stated, "to regulate and control for any and every purpose, the use of the streets, highways, public thoroughfares, public places, alleys and sidewalks of the city and county;" (3) "to prescribe and regulate the method and style of con-

struction" of certain named buildings; (4) "to regulate
and prescribe the construction of chimneys and smoke-
stacks  *  *  *  and to regulate and prevent the emis-
sion of dense smoke or poisonous gases therefrom;" (5)
"to prescribe and regulate the places where and the con-
ditions under which" certain work shops, ·bakeries,
theatres, halls and other buildings and institutions "may
be erected, maintained, used or operated;" (6) "to enact
and to enforce all ordinances necessary to protect health,
life and property;" (7) "to regulate, as to location,
methods and materials of construction and otherwise,
the erection, moving, repairing, placing and maintenance
of buildings and other structures;" (8) "to create a city
planning commission to be charged with the duty of
formulating rules and plans to regulate the future
growth, development and beautification of the city and
county of Honolulu in its public and private buildings,
streets, parks, grounds and vacant lots;" (9) "to regu-
late the use of hackney carriages and public passenger
vehicles;" (10) "to regulate and require the laying of
water and sewer mains in new subdivisions of land before
the same are offered for sale, and to prescribe the con-
ditions under which such mains shall be laid;" (11) "to
regulate and control the location and quality of all ap-
pliances necessary to the furnishing of water,. heat, light,
power, telephonic and telegraphic service to the city and
county;" and to do certain other things, perhaps some
of them of a legislative nature and most of them of an
executive nature.

Whether the charge as entered and as above quoted
was sufficiently specific to inform the defendant of the
respect in which he had violated the statute need not be
considered.    The point does not seem to have been
raised ·in the court below and in this court counsel are
agreed that the substance of the charge is that the de-

fendant sold a certain lot in a new subdivision of land in the suburbs of Honolulu without first obtaining the approval of the board of supervisors to the plan of subdivision. We shall so regard the charge. The essence of the ordinance is that any owner desiring to make a subdivision of land for the purpose of sale of building lots therein shall submit to the mayor and the board of supervisors a plan of the proposed subdivision showing various enumerated details and that the mayor and the board "may, if they deem it for the convenience of the inhabitants of said City and County and the public, grant" to the applicant the right to lay out the subdivision according to the proposed plan and specifications, "or may modify said plat and said specifications in such manner as to them may be deemed best for the public interest." The ordinance makes it unlawful for any owner to sell any lot in any subdivision without complying with the provisions just mentioned. The argument for the Territory is that the ordinance is a proper exercise of the power granted by section 1738 "to make ordinances covering local police matters."

An ordinance is a law, a rule of action, a rule for the guidance of the people of the municipality and a rule for enforcement by the executive officers of the municipality charged with that duty. To make an ordinance is to perform a legislative act, to prescribe a local law for the information of the members of the community with reference to the subject which it covers, indicating what they may do and what they may not do, lawfully. "Municipal ordinances are laws passed by the governing body of a municipal corporation for the regulation of the affairs of the corporation." 21 A. & E. Ency. L. 947; also 28 Cyc. 347, 348. "The word 'ordinance' is a term of settled meaning. It means a local law, prescribing a general and permanent rule." *Citizens' Gas Co.* v. *El-*

*wood,* 114 Ind. 332, 336. "The terms 'by-law,' 'ordinance' and 'municipal regulation' have substantially the same meaning, and are defined 'to be the laws of the corporate district, made by the authorized body, in distinction from the general law of the state.' They are local regulations for the government of the inhabitants of the particular place." *State* v. *Lee,* 29 Minn. 445, 451. "The word 'ordinance,' as applicable to the action of a municipal corporation, should be deemed to mean local laws passed by the governing body. The legislature of the state passes laws and makes rules for the government of its procedure. So, a municipal corporation passes laws, called 'ordinances,' and enacts rules." 6 Words & Phrases 5024. That, in the phrase under consideration, in subparagraph 1 of section 1738, the word ordinance is used in its usual and ordinary acceptation, is emphasized by the nature of the other powers granted in the same section above enumerated, each of which is to "regulate" certain activities. Even in subparagraph 9 the city planning commission thereby authorized to be created is to be charged with the duty of "formulating rules and plans to regulate" the future growth of the city in certain respects. It is clear that the power granted in subparagraph 1 "to make ordinances," under the police power, is a legislative power, a power to make laws, rules of action.

The ordinance under consideration, however, does not prescribe any rule of action for cases of subdivisions. of land either for all the people of the community or for all of those who may be found within certain reasonable classifications. No minimum width is prescribed for streets or sidewalks. No widths are prescribed for streets of certain lengths. No rule of widths is prescribed with reference to the size of the tract or other surrounding circumstances. There is no specification of heights of

curbstones or of materials to be used in the construction
of the roads or of the sidewalks or of the methods of
construction or of the grades. No rule of action is pre-
scribed for all owners intending to subdivide. lands or
for all owners whose lands are situated or affected by
certain stated circumstances. No owner can from an
inspection of the ordinance learn what his duties are. All
is left to the uncontrolled discretion of the mayor and
supervisors. While the ordinance provides that these
officers may "if they deem it for the convenience of
the inhabitants" approve a proposed subdivision and may
"if they deem it for the convenience of the inhabitants"
disapprove of the proposed plan and prescribe another,
it does not set forth any rule or standard by which it
can be judged what is and what is not for the convenience
of the inhabitants. Under the ordinance as it stands these
officers may require of one owner roads fifty feet wide
and of another similarly situated roads only thirty feet
wide; they may require of the first sidewalks ten feet
in width wholly built of concrete and may permit the
second to have sidewalks only five feet in width com-
posed entirely of soil. The ordinance does not regulate
under uniform rules. If it is valid neither injunction
nor mandamus will lie to restrain an obviously unfair dis-
crimination and the officers may, with impunity, act with
favoritism, arbitrarily and capriciously.

In enacting section 1738 it was not the intention of
the legislature of Hawaii to authorize the mayor and
the board of supervisors to take unto themselves any
such arbitrary power and to defer until the happening
of each particular instance the decision of what the re-
quirements as to roads and sidewalks should be. To
reserve the right to assent to the application of one
landowner and to refuse that of another, the lands of
both being situated under and affected by the same cir-

cumstances, and to decide upon each particular application as it comes without any rule or standard of action is not to regulate by ordinance or to regulate at all.

The defense that the mayor and the supervisors have in the past ruled equitably and not arbitrarily in all cases of subdivisions of land cannot avail to save the ordinance. If the attempted ordinance does in fact confer arbitrary power, unmeasured by any reasonable standard, it is not within the power conferred by section 1738. "It is not sufficient that the Executive Council may act fairly under the statute or even that it has acted fairly in any particular case. The statute is unconstitutional because by its terms the Executive Council may act arbitrarily, however unlikely it may be to do so." *Tai Kee* v. *Minister of the Interior,* 12 Haw. 164, 167.

In *Territory* v. *Ontai,* 28 Haw. 534, an ordinance relating to dance halls was held unauthorized and invalid because it "lays down no standard by which the fitness of the premises for the purpose contemplated may be determined but leaves such determination to the uncontrolled opinion of the dance-hall inspectors."

The ordinance "does not prescribe a rule and conditions for the regulation of the use of property for laundry purposes, to which all similarly situated may conform. * * * It divides the owners * * * into two classes * * * by an arbitrary line, on one side of which are those who are permitted to pursue their industry by the mere will and consent of the supervisors, and on the other those from whom that consent is withheld, at their mere will and pleasure. * * *

"There may be a case in which an ordinance, passed under grants of power like those we have cited, is so clearly unreasonable, so arbitrary, oppressive, or partial, as to raise the presumption that the legislature never intended to confer the power to pass it, and to justify the

courts in interfering and setting it aside as a plain abuse of authority." *Yick Wo* v. *Hopkins,* 118 U. S. 356, 368, 372, quoting with approval from *Baltimore* v. *Radecke,* .49 Md. 217.

Under the ordinance, "we have an unregulated official, discretion which of itself renders the ordinance void, for it cannot be tolerated that the rights of a citizen in this State shall depend entirely upon the caprice of any official, high or low. All valid ordinances must fix the duty or liability of the citizen by certain intelligible prescribed rules so that he may govern himself accordingly." *St. Louis* v. *Heitzeberg Pkg. Co.,* 141 Mo. 375, 388.

Under this general authority to pass ordinances under the police power, "the municipality, acting within the limits of legitimate corporate authority, and to carry out and make effective its lawful powers, may pass ordinances prescribing general regulations applicable alike to all citizens, and by which each may regulate his conduct and know his rights and his duty as a member of the corporation; but it is not consistent with any express or implied power that is to be found in the municipal charter that any individual, or any agency of the corporation should be invested with the unrestrained and unregulated power and authority to say, in each particular case as it arises, what the good government and welfare of the community may demand when dealing with, and undertaking the control of, the rights of the citizen in respect to the enjoyment and use of his property, as has been done by the provision in the ordinances of the city here brought under consideration if the same is to be held valid. The right of the corporation to confer such a power cannot therefore be derived from any implication." *Bostock* v. *Sams,* 95 Md. 400, 415.

"An ordinance, to be valid, must be within the cor-

porate power, promotive of the purpose for which the power was delegated, or is inherently possessed, and free from the vices of unreasonableness, partiality, arbitrariness and unconstitutionality." *Town of Fulton* v. *Norte-.man,* 60 W. Va. 562, 574.

"The power of legislation vested in them" (the supervisors) "is a public trust, which can be executed only in consonance with the general purposes of the municipality, and in subordination to the general laws and policy of the state. Their ordinances must be reasonable,—that is, not oppressive nor unequal nor unjust in their operation,—or they will not be upheld. Such is the well-established doctrine with respect to the legislation of municipal bodies." *In re Quong Woo,* 13 Fed. 229, 232.

See also 28 Cyc. 351, 352, 368, 369; *Ex parte Frank,* 52 Cal. 606, 609; *State* v. *Tenant,* 110 N. C. 609, 612, 613; *Newton* v. *Belger,* 143 Mass. 598, 599, 600; *Heerdt* v. *City of Portland,* 8 Fed. Rep., second series, advance sheets, 871, 872.

It is unnecessary to pass upon the contention advanced by the defendant that the ordinance, even if its enactment was within the powers granted by section 1738, violates the provisions of Article XIV of the Amendments to the Constitution of the United States that no State shall "deprive any person of life, liberty, or property, without due process of law" or "deny to any person within its jurisdiction the equal protection of the laws" and the provisions of Article V of the same amendments that "no person * * * shall * * * be deprived of life, liberty, or property, without due process of law" and that "private property" shall not "be taken for public use, without just compensation." It is sufficient for the purposes of this case to hold, as we do, that the legislature did not authorize the supervisors to pass it.

In our opinion ordinance No. 97 is *ultra vires* and void.

The judgment and the sentence of the court below are reversed and set aside and the defendant is discharged.

*A. Withington* (*Robertson & Castle* on the briefs) for plaintiff in error.

*H. L. Wrenn,* Deputy City and County Attorney (*W. H. Heen,* City and County Attorney, and *E. K. Massee,* Deputy City and County Attorney, on the brief), for the Territory.