# IN THE MATTER. OF THE APPLICATION OF TAI KEE FOR A WRIT OF MANDAMUS.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED APRIL 1, 1897.          DECIDED JUNE 14, 1897.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE CARTER, IN PLACE OF JUDD, C.J., ABSENT.

Act 64, Laws of 1896, provides in Sec. 1 that "The Minister of the Interior may, upon application of any person, issue to such applicant any license hereinafter enumerated, upon the terms and conditions hereinafter set forth," and prescribes in Secs. 68-74 the terms and conditions upon which lodging-house licenses may be issued. Held, that the word "may" in Sec. 1 should be construed as "shall" with reference to lodging-house licenses, and that the Minister has not discretionary power to refuse to issue a lodging-house license to an applicant who has complied with the terms and conditions set forth in Secs. 68-74.

OPINION OF THE COURT BY FREAR, J.

This is an application by one Tai Kee for a writ of mandamus directing J. A. King, Minister of the Interior, to issue to him a lodging-house license. The applicant alleges that he is possessed

of a leasehold interest in a certain lot of land at the north angle of Beretania and Pensacola streets in Honolulu; that he has expended a thousand dollars in erecting on said lot a building designed and intended to be used as a lodging house; that the same cannot without great expense be adapted to any other purpose; that on January 4, 1897, he demanded of J. A. King, Minister of the Interior, a license for a lodging house to be conducted in said building, at the same time tendering the fee required by law and presenting a certificate from the Board of Health as required by law; but that the said Minister arbitrarily and in violation of law refused to issue such license.

An alternative writ was allowed directing the Minister to issue the license or show cause to the contrary.

The Minister answered, admitting the refusal to issue the license, denying that he refused arbitrarily or in violation of law, and alleging that he refused in good faith in the exercise of his discretion under the statute and for the reasons following, namely: "1. Because the lodging house theretofore maintained upon said premises under a license granted to the petitioner under the name of Tai Kee had been so conducted as to cause great annoyance to residents in that locality. 2. Because the premises had become notorious as a place of resort for gamblers and disreputable persons. 3. Because many persons residing in the neighborhood had protested against the granting of such license. 4. Because that under all of the circumstances the respondent believed it to be in the public interests and for the common good that the petitioner's request be refused."

Affidavits were attached to and made part of the answer in support of the grounds on which the refusal was based, and a counter-affidavit was filed by the applicant.

The Circuit Judge was of the opinion that the Minister was vested by law with discretionary power in the matter of the issuance of lodging house licenses and dismissed the application. The case comes here on appeal from this decision.

Counsel for the applicant concedes that if the Minister has discretionary power under the statute he has properly exercised

it in this case; also that a grant of such power to the Minister would be constitutional; but he contends that the statute cannot, upon a proper construction thereof, be held to confer such power.

The statute (Act 64, Laws of 1896) is a comprehensive Act amending, adding to and consolidating nearly all former laws relating to licenses, and repealing such former laws. Its first section is as follows:

"Section 1. The Minister of the Interior may, upon application of any person, issue to such applicant any license hereinafter enumerated, upon the terms and conditions hereinafter set forth."

Then follow various general provisions, and after these the special provisions relating to the various classes of licenses. The part relating to lodging house licenses is as follows:

"LODGING OR TENEMENT HOUSE; HOTELS, BOARDING HOUSES AND RESTAURANTS.

FEE.

Section 68. The annual fee for a license to keep a lodging or tenement house shall be two dollars.

Section 69. The annual fee for a license to keep a hotel, boarding house or restaurant shall be fifty dollars.

CERTIFICATE OF BOARD OF HEALTH.

Section 70. No license shall be issued for a lodging or tenement house, hotel, boarding house or restaurant, until the applicant shall secure from the Board of Health, and present to the Minister, a certificate setting forth that an Agent of the Board has examined the house or houses proposed to be used for such purposes, with a description thereof sufficient to identify and locate the same; and that the same are in good sanitary condition and suitable to be used for such purpose; and stating the number of persons which, by law, can be lodged therein.

### Conditions of License.

Section 71.   A lodging or tenement house, hotel, boarding house or restaurant license shall be issued upon the following express conditions, which shall be incorporated in the license, viz.:

1.   That the licensee shall not keep a noisy or disorderly house;

2.   That no prostitute shall be allowed to reside therein or resort thereto;

3.   That no intoxicating liquor shall be furnished or sold therein, except as authorized by law;

4.   That no more persons shall at any time be lodged therein than are permitted by the license;

5.   That the buildings and premises licensed shall be kept in good sanitary condition, in accordance with law and with the orders of the agent of the Board of Health;

6.   That the police and agents of the Board of Health shall at all times have access thereto for purposes of inspection;

7.   That no gaming shall be allowed therein.

### Penalty.

Section 72.   Any person who shall keep a lodging or tenement house, hotel, boarding house or restaurant without a license under this Act; or who, holding a license, shall violate or fail to observe any of the requirements or condition of this Act or of his license, shall be fined not less than ten nor more than one hundred dollars, and the court, in its discretion, may cancel his license.

### Private Families Excepted.

Section 73.   Nothing in this Act contained shall be construed to prevent a private family from incidentally taking not more than three boarders or lodgers without taking out a license thereunder.

EXEMPTION OF COUNTRY HOTELS.

Section 74. The Minister may also, in his discretion, permit hotels at which both meals and lodgings are furnished, at points other than in Honolulu, where they are a public convenience, to be carried on without a license under this Act."

The Minister contends that the word "may" in Section 1 imports "discretion," and he relies on *Bradley v. Thurston*, 7 Haw. 523, in support of this contention. In that case the statute provided that "The Minister of the Interior shall have the power to grant licenses to retail spirituous liquors," etc. Mr. Justice Dole, who heard the case originally, held in substance that the words, "shall have the power," "it shall be lawful," "may," and "authorized," found in our various statutes relating to licenses, *prima facie* import a discretion and should be so construed unless the public interest or the rights of third persons or the subject matter or the other parts of the statute show that they were meant to be imperative; that there was nothing in that case to show that the words in question were meant to be imperative, but that on the contrary other parts of the statute tended to show that the words were intended to confer a discretion; that, the statute having conferred a discretion upon the Minister, it was not for the court to pass upon the sufficiency of the reasons for refusing the license, further than to ascertain whether a real or legal discretion was exercised, that is, a discretion based upon the grounds that might properly be considered, or whether it was exercised arbitrarily or capriciously; and that in that case the Minister had in fact exercised a legal discretion. On appeal the Supreme Court held, without setting forth the reasons, that the decision appealed from was correct in so far as it held that discretionary power was conferred on the Minister, but all the Justices, with the exception of Mr. Justice Dole, who adhered to his original opinion, went further and held that the discretionary power was absolute and that the court could not inquire whether it was exercised legally or arbitrarily.

Assuming that the decision in *Bradley v. Thurston* has estab-

lished the law for subsequent cases to which it is applicable, we are of the opinion that it is not applicable to the present case. That case is distinguishable from this in respect of both the subject matter and the language of the statute, either of which, as recognized in that case, might be such as to require the word "may" to be construed as "shall."

Take first the subject matter. The portion of the statute now under consideration relates to licenses for keeping lodging or tenement houses, hotels, boarding houses, or restaurants—occupations not only harmless in their nature but actually necessary to the welfare and convenience of the public. Such occupations are not subject to the same degree of control as are those which, like that of selling intoxicating liquors, involved in *Bradley v. Thurston*, are believed to be harmful or dangerous in themselves. The latter may be regulated or restricted to any extent, even to the extent of prohibition. The former, being harmful, if at all, not from their nature, but only from the particular way in which they are conducted, may be regulated only to a reasonable extent and with reference to the evils to be remedied or avoided. The Legislature itself could not constitutionally impose unreasonable or arbitrary restrictions upon such pursuits; much less could it delegate such power to any other person or body. It may itself impose reasonable conditions or it may place considerable discretionary power in executive officers, but in the latter case there should be something in the statute to guide or control the action of the officers. To illustrate, in the present case, if the Minister has discretionary power from the mere use of the word "may," there is nothing to guide him in the exercise of his discretion. Such absolute discretion could not be given him. But in Section 70 the statute requires as a condition of obtaining a license that the applicant shall first procure a certificate from the Board of Health certifying that the premises are in good sanitary condition and suitable to be used for the desired purpose, and stating the number of persons that can be lodged therein. It is obvious that the Board of Health or its agents must exercise a

discretion in these particulars, but these are conditions that may reasonably be imposed in respect of lodging houses, and the officers are limited in the exercise of their discretion to these.

That the decision in *Bradley v. Thurston* was made with reference to this distinction between occupations harmful in themselves, and those not harmful in themselves, or, as sometimes stated, occupations that may be pursued as matter of right and those which may be pursued only as matter of privilege, is clear, not only from the nature of the authorities there cited, most of which related to liquor licenses, but from the fact that all the Justices who took part in that decision had already recognized this distinction in an opinion in which, so far as any "trade, business or occupation lawful in itself" was concerned, they answered in the negative the question put to them by the Legislature, "Has the Legislature power under the Constitution to enact a law making it unlawful for any person to carry on any trade, business or occupation without a license, and giving some designated person or body absolute discretionary authority to grant, or refuse to grant, such licenses?" *Re Licenses,* 7 Haw. 771. That opinion, it is true, contains some expressions which may seem inconsistent with the views set forth in this decision as to the application of the principle in question; but perhaps they may be explained by reference to the authorities on which they purport to be based and which are entirely consistent with the views here set forth.

In *Republic v. Kum Lee,* 10 Haw. 491, the statute provided that, "It shall be lawful for, and the Minister of the Interior is hereby authorized and empowered to cause to be built    *    *    *  a sufficient number of laundries and wash houses, and to let the same to persons applying therefor," and made it a penal offense to "carry on the business of laundry keeping or washing for hire *    *    *    except in such buildings." The laundry business, like the lodging house business, is not harmful or dangerous in its nature. This Court held that it was the *duty* of the Minister to erect a sufficient number of buildings.

An ordinance of the City of San Francisco provided that "It shall be unlawful * * * for any person or persons to establish, or carry on a laundry * * * without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone." The Supreme Court of the United States held the ordinance unconstitutional on the ground that it practically gave the supervisors arbitrary power, making laundrymen mere tenants at will under them, of their means of living, and prescribing no rules or conditions for their guidance. *Yick Wo v. Hopkins*, 118 U. S. 356, citing *City of Baltimore v. Radecke*, 49 Md. 217, to the same effect with reference to the use of steam engines in the city of Baltimore.

In *State v. Conlon*, 65 Conn. 478, the statute provided that, "The mayor of any city * * * may issue a license to such persons as they may find proper persons to engage in a temporary or transient business," &c. The court held the statute unconstitutional, saying:

"The legislature has full power to regulate such a business, but its regulation must be governed by very different principles from those which may govern the regulations of a business in its nature dangerous to the public. In the one business no citizen has an absolute right to engage; in the other all citizens have the right and an equal right to engage. The difference is vital. What is the regulation prescribed by this Act? It is simply a prohibition of the business unless a license is obtained from the officers of the municipality where the business is to be conducted. If the terms on which such license should be granted were defined, a different question would be presented. If the Legislature believes that fraud and deception are increasingly liable to be practiced in the conduct of any kind of business, or of all business, it may undoubtedly require, by way of security against such fraud and deception, the persons engaging in such business to take out licenses on terms prescribed by law and applying equally to all citizens. In Massachusetts 'An Act to prevent

and punish fraud in sales of goods, wares and merchandise at public or private sale by itinerant vendors and to regulate such sales' was recently passed. The Act attempted to define 'itinerant vendors' so as to include ordinary transient business, provided security for their customers by requiring a deposit of money to be made with the State, and by other regulations, and required the amount of the license fee charged to be ascertained according to law, and a license to be issued to whoever complied with the law. This Act was held not to violate the Massachusetts Constitution by a majority of the Supreme Court. *Commonwealth v. Crowell*, 156 Mass. 215. However such an act might be regarded under our Constitution, it is wholly different from the Act under discussion, which not only forbids the transaction of the business without a license, but permits the local authority to grant a license to one and to refuse it to another, in pursuance of a discretion unguided and unrestrained by law. It says: 'The mayor may license such persons as he finds to be proper persons to engage in a temporary business for the sale of goods, wares and merchandise,' and 'any person engaging in such business without obtaining a license therefor shall be guilty of a misdemeanor.' The unrestrained power of selecting the favored recipients of a license is given to the mayor; all persons who cannot obtain this special privilege are forbidden to carry on the business under a penalty that may extend to a fine of $200 and imprisonment in the common jail for six months. If the word 'may' as here used could be given the effect of 'shall,' the question would be presented in a little different form. It would be our duty to construe 'may' as 'shall' if necessary to give effect to an Act, and the context would permit such construction. But here the context plainly forbids that construction. The conditions of the Act do not support a mandate to issue a license upon compliance with rules established by law; on the contrary, they clearly provide for the exercise of a discretion unrestrained by law. The phrase 'such persons as he finds proper persons to engage in a temporary business,' is too vague to support any

definite judicial or *quasi* judicial action. There is not a regulation established which the licensees are bound by law to observe, and there is absolutely no legal test and no indication of who may be a 'proper person.' Without some test fixed by law every person must be presumed to be a proper person to conduct an ordinary and lawful business. The mayor is authorized to select from those legally presumed to be proper persons such as he finds proper; the necessary legal effect of this phrase is 'such persons as he pleases.' So that if 'may' were construed as 'shall,' the Act would then say, 'the mayor shall license such persons as he pleases.' "

We have cited authorities and referred at some length to the question of the constitutionality of a statute like that in question, in case it could be ,construed only as conferring absolute discretionary power. But we do not care to decide a question of the constitutionality of a statute unless obliged to, and then, if possible, only after full argument. This question has not been argued at all in this case, and, as already stated, counsel for the applicant expressly concedes that the statute would be constitutional, even if construed to confer absolute discretion. But we cannot very well consider the question of the construction of the statute without coming pretty close to the question of its constitutionality, in case it should be construed as the Minister contends it should be. If that construction should be placed upon it, the statute would be either constitutional or unconstitutional. If unconstitutional, the Court should, if possible, as said in *State v. Conlon, supra,* construe it as not conferring absolute discretion, so as to give effect to it. If constitutional, enough has been said to show that it should not be construed as placing such extraordinary power in the hands of any one person, unless the Legislature has shown very clearly that it so intended. In either case, therefore, "may" should, in this instance, be construed as "shall," if possible.

Let us, therefore, look, secondly, at the language of the statute itself, and see if it is capable of this construction. The statute

relates to twenty-three classes of licenses of widely different characters. The word "may" used in the first section as applicable to all these classes must have been used in a more elastic sense than if used with reference to and in close connection with one class only, as was the case with the words in question in *Bradley v. Thurston*. In the portion of the statute which relates to licenses for the importation and sale of alcohol and poisonous drugs, the substance of the first section, *prima facie* denoting discretion, is repeated, namely, in the words (Sec. 9), "The Minister of the Interior is hereby *authorized* to grant," &c. But in general the portion of the statute relating to a particular class of licenses contains no such words, but is framed like the portion in question relating to lodging-houses. Among these may be mentioned that relating to the sale of "goods, wares and merchandise," which begins (Sec. 75): "The annual fee for a license  *  *  *  shall be," &c. It could not reasonably be contended that the Legislature intended to give the Minister discretionary power in regard to this class of licenses; and in *Re Licenses, supra,* the Justices particularly mentioned this class of licenses as one in which such power could not be given, and called attention to the fact that the Legislature had recognized this by using the word "shall" in the statute then in force relating to such licenses. But that statute has been repealed and the word "shall" is not used in the present statute. In view of that opinion and the subject matter of this portion of the statute, the Legislature must have intended the word "may" to mean "shall" with reference to goods, wares and merchandise. If that word means "shall" with reference to goods, wares and merchandise, it *may* mean the same with reference to lodging-houses, and if it *may* mean "shall," then, in view of what has been said in the first part of this opinion, we must hold that it *does* mean "shall," unless there is something else in the statute to show that it was not intended to be so construed with reference to lodging-houses. We find nothing to show any such intention. On the contrary, there are additional

indications of a contrary intention. For instance, the portion of the statute that relates to fire arms, like that relating to lodging-houses, begins (Sec. 57): "The annual fee for a license * * * shall be," &c. But there is added: "The Minister may, in his discretion, refuse to issue a license" under certain circumstances. Why expressly provide for discretionary power in one case (that of fire arms) and not in another case (that of lodging-houses), unless such power were intended to be given in the one case and not in the other? Again, taking the portion of the statute that relates to lodging-houses by itself, the requirements and conditions set forth in Sections 70 and 71 would seem to indicate that the Legislature meant to provide for all the regulation intended or thought to be necessary, and not to leave the matter to the Minister. Again, in Section 72, it is expressly provided that the Court may, in its discretion, cancel the license, upon a conviction for a violation of its requirements or conditions, and in Section 74 it is provided that the Minister may, in his discretion, permit hotels under certain circumstances without a license. These provisions, so far as they bear upon the matter, tend to show that the Minister was not intended to have a discretion as to the granting of licenses, when the applicant has complied with the conditions prescribed by the statute.

The decision and order appealed from is reversed and the cause remanded to the Circuit Judge for such further action as may be proper.

*A. S. Humphreys,* for the applicant.

*Dep. Att'y Gen'l E. P. Dole,* for respondent.