IN THE MATTER OF THE APPLICATION OF CON-
STANTINA NUNES ATANAZIO, A MINOR, FOR A
WRIT OF HABEAS CORPUS.

No. 1404.

APPEAL FROM CIRCUIT JUDGE FIFTH CIRCUIT.
HON. W. C. ACHI, JR., JUDGE.

ARGUED JUNE 8, 1922.                    DECIDED JUNE 19, 1922.

PETERS, C. J., EDINGS, J., AND CIRCUIT JUDGE ANDRADE
IN PLACE OF PERRY, J., DISQUALIFIED.

HABEAS CORPUS.

> A writ of habeas corpus will lie to restore the custody of a
> child to its parents when it appears that the parents left the
> child temporarily with another and with no intention of aban-
> doning it.

PARENT AND CHILD.

> Parents are entitled to the sole care and custody of their chil-
> dren unless they have abandoned them or are unfit to exercise
> control over them by reason of immoral practices or pernicious
> example.

OPINION OF THE COURT BY EDINGS, J.

This was an application for a writ of *habeas corpus* by
Angelica Nunes Atanazio of Honolulu, a widow, in the
name of her minor daughter, Constantina Nunes Atana-
zio, aged eight, against Christian Keiek and Mary Keiek,
his wife, of Kilauea, Kauai, to obtain the custody of the
child. The case having been heard the trial judge ren-
dered a decree remanding the child to the care, custody
and control of the respondents "until she shall arrive at
the age when she may properly select her own guardian,"
and dismissed the writ, from which an appeal was per-
fected to this court.

The uncontradicted evidence shows that the mother, Angelica Nunes Atanazio, now a widow, arrived from Portugal twelve years ago and lived in Hanamaulu, Kauai, where the girl was born in 1913; that in 1914 she was living apart from her husband and residing with a family at Pearl City, in this county, doing household work, etc.; that at that time she had three children living with her, whom she was supporting, and was pregnant with a fourth; that the child in question was then ten months old; that she asked her employer, Mrs. Kekumano, to take care of this child, but she (Mrs. Kekumano) was unable to do so and suggested that she give the child to the respondents, Mr. and Mrs. Keiek, Mr. Keiek being a brother of Mrs. Kekumano; that Mrs. Keiek called upon Mrs. Atanazio and consented to take the child, who was then delivered to her and she returned to Honolulu with the baby; that three days afterwards Mrs. Atanazio wanted the child back and Mrs. Keiek brought the child back to her at Pearl City; that the next morning Mrs. Atanazio, through an interpreter, told Mrs. Keiek that she would give her the child again; that Mrs. Keiek at first refused to accept the child unless Mrs. Atanazio "would make out papers giving her the child"; which she refused to do; that the result was that the conference ended in Mrs. Keiek taking the child,—whether to be kept by her permanently or temporarily it is difficult to determine, but there were no articles of adoption and it appears that Mrs. Atanazio's understanding of the agreement was that the child was to be kept until she (Mrs. Atanazio) was of sufficient ability to care for it. Shortly after the birth of the fourth child (six months after this agreement to take the child), according to Mrs. Atanazio she desired to retake possession of the child and Mrs. Keiek objected. Thereafter she again attempted, with the assistance of a friend, to get the baby but Mrs. Keiek put it in a room

and stood guard over it so that her attempt was a failure. In August, 1914, Mrs. Atanazio went to see Judge Whitney of the juvenile court of this county in an attempt to regain the baby; at this hearing Mrs. Keiek attended with the child. At that time the older children were with the Salvation Army as the mother was unable to support them. Judge Whitney refused to take the baby from Mrs. Keiek but also refused to give Mrs. Keiek any written authority although she specifically asked for it, basing his refusal upon the mother's objection. The mother then jumped up and took hold of the little girl and both women pulled until separated by an officer of the court. The next year (1915) the Keieks moved to Kauai with the little girl. In 1918 or 1919 the mother called to see Judge Heen, then the judge of the juvenile court of this county, who wrote to the Keieks to inquire by what authority they were keeping the child and Mrs. Keiek in response came to Honolulu and brought the little girl with her. Judge Heen refused to take the child from Mrs. Keiek but refused also to give her any written authority empowering her to retain the custody of the child. Afterwards the mother wrote to the Keieks on Kauai in regard to the child but her letters were all unanswered, Mrs. Keiek testifying that she had received three letters but did not answer them. In 1920 the father died and in June of that year the mother (Mrs. Atanazio) was appointed guardian of the person and estate of the girl in question and the other three children. In December, 1921, the mother (Mrs. Atanazio) went to Kauai and again attempted to obtain possession of the child but was unable to do so and then instituted the present proceedings.

There is not a scintilla of evidence in the entire record reflecting in the slightest degree upon the character of the mother. While it is true that for most of the time she

was in exceedingly straitened circumstances and barely able to support herself and the child who was then with her, due to the death of the father of the child and his leaving a small estate she is at the present time in circumstances which, with her energy, thrift and economy will doubtless enable her to properly care for and educate all of her children. Throughout the entire period she has always entertained an unusual amount of affection for the child and has endeavored, unaided, due to her financial difficulty, to obtain possession of the child and has invariably failed through no fault of her own.

It is claimed by the respondents, and was found by the two judges of the juvenile court, that it was for the best interest of the child to remain in the custody of the respondents, but even were that condition so at the time of the two hearings before those judges it cannot be said to exist at the present time.

The parents are the legal, proper and sole custodians of their children until by some act of their own they have forfeited that right; and from the evidence in this case it would be in contravention of the statute, and repugnant to the dictates of humanity, to deprive this mother of her infant daughter.

Stress is laid upon the fact that she was appointed by the circuit court guardian of this and her other minor children. While this is a circumstance to be considered in refutation of the theory that she had abandoned the child, what her rights under this appointment were is immaterial to the issue in this case and need not be considered.

A large majority of the cases sanctioning the placing of a child in other custody than that of the mother, upon the ground that the child would be benefited thereby, rest upon the unfitness of the mother to exercise maternal control over the child on account of her immoral practices

or pernicious example.   Church on Habeas Corpus, Secs. 440-442.

Stress is laid upon the fact that at the hearing in this case before the circuit judge the little girl expressed a desire to remain with the respondents but this does not appeal to us as a child of her tender years could scarcely be expected to exercise a rational choice.

"We cannot for a moment agree that a boy of thirteen can be allowed, at pleasure, to abandon his filial duties and select elsewhere a home more agreeable either to his desires or his worldly interests.  So to hold would simply be to offer a premium to the children of the poor to shirk the duties to which their station in life has called them, and to permit them, at the sacrifice of all the natural affections, to set about bettering their condition at a period in life when the law dedicates both their persons and their services to parental control." *Moore* v. *Christian,* 56 Miss. 408.

"Nor will the attachment of the child to its foster parents, by reason of kind treatment and association, be given serious consideration, unless the effort to reclaim it has been delayed until the child has reached the age when the presumption may be indulged that it is capable of forming and has formed a lasting affection for those to whom it is indebted for reciprocal love and maintenance, and that the sundering of such ties will subject to serious hazard its interest and happiness." *Parker* v. *Wiggins,* 86 S. W. 788.

The appeal should be sustained and it is so ordered and the decree appealed from is reversed and the cause remanded with instructions to enter an order therein awarding the child to the custody of the mother, Angelica Nunes Atanazio, the petitioner.

*L. A. Dickey* for petitioners.
*E. K. Aiu* for respondents.

### CONCURRING OPINION OF PETERS, C. J.

I concur in the foregoing result.   It does not appear that the petitioner ever relinquished or forfeited her right

to the custody of her child nor is there any showing that she is personally unfit to enjoy that right or unable to undertake and completely perform the statutory duties that devolve upon her by reason thereof. Under that state of the case it will be presumed that the interests of the child will be best conserved by being returned to the mother irrespective of the material advantages that the respondents, strangers in blood, may be able to offer. The rule that the welfare of the child is the polestar guiding the discretion of the court gives way to the statutory right of custody. Where the fitness of the parent is unquestioned, the right of the parent is the paramount consideration in determining the welfare of the child. It would be a travesty upon the natural and statutory rights with which parentage is endowed were materialism, under these circumstances, the criterion of a child's custody. *Verser* v. *Ford,* 37 Ark. 27; *Cormack* v. *Marshall,* 122 Ill. App. 208; *Van Auken* v. *Wieman,* 128 Ia. 476-478; *State ex rel Lehman* v. *Martin,* 103 N. W. (Minn.) 888; *Norval* v. *Zinsmaster,* 77 N. W. (Neb.) 373; *Terry* v. *Johnson,* 103 N. W. (Neb.) 319; *State ex rel Bethell* v. *Kilvington,* 45 S. W. (Tenn.) 433; *State* v. *Deaton,* 54 S. W. (Tex.) 901; *State* v. *Richardson,* 40 N. H. 272-275.