IN THE MATTER OF THE ADOPTION OF NUMA AUGUSTIN WATSON, III AND DALE RANDOLPH WATSON, MINORS.

No. 4002.

APRIL 28, 1961.

TSUKIYAMA, C. J., CASSIDY, LEWIS, JJ., CIRCUIT JUDGE HEWITT ASSIGNED BY REASON OF ILLNESS OF WIRTZ, J., AND CIRCUIT JUDGE CROCKETT ASSIGNED BY REASON OF VACANCY.

70

OPINION OF THE COURT BY TSUKIYAMA, C. J.

The juvenile court of the first circuit court issued a decree declaring the adoption of two minor children by the husband of their natural and legal mother. Their natural father was deceased. By the same decree, their surname was changed to that of the adoptive father. The decree was made effective as of August 5, 1955.

Approximately three months thereafter, to wit, on November 28, 1955, the paternal grandfather of the children, Numa A. Watson, petitioned the court to set aside the decree of adoption "at least to the extent that the decree effects a change of name of the children." The petition avers in substance that, on account of the brilliant military record of their deceased father's family, the decretal order of the juvenile court changing the children's surname to that of their adoptive father was not in their best interest; that the children were not properly represented; and that petitioner himself was not made a party to or given notice of the adoption proceedings. On the alleged ground that the petition presented no sufficient reason warranting a modification or setting aside of the decree, the adoptive father filed a motion to dismiss the petition. The court, after hearing both counsel on the

motion, granted the same and entered an order dismissing the petition on June 18, 1956. A notice of appeal to this court was filed by the petitioner not only from said order but from the decree of adoption. The juvenile court, however, "allowed" the appeal "only from the order of June 18, 1956." Subsequently, and in conjunction with this appeal, the petitioner filed a motion to be permitted to examine and use the court's file on appeal and also orally moved to be appointed guardian ad litem for the children. Both requests were denied, but the court permitted appellant to designate on appeal the record of all papers filed on or after November 28, 1955. From the order of such denial, entered on July 30, 1956, the petitioner has also appealed and is now before this court as appellant. For the purpose of briefing and argument, the two appeals have been consolidated.

The facts are not in dispute that after the death of Numa A. Watson, II, the father of the two minor children, the widow of the deceased and natural mother of said children married and became the wife of Alfred Sanderson, appellee in the case at bar. In pursuance of the adoption law of Hawaii, appellee, with the written consent of the mother, instituted and completed adoption proceedings in the juvenile court, as a result of which the minor children, Numa A. Watson, III, and Dale Randolph Watson, were decreed adopted by him, and the surname of each changed from "Watson" to "Sanderson."

The minutes of the hearing held on April 12, 1956, disclose that in dismissing the grandfather's petition, the juvenile court ruled that the petitioner, not being a party to the adoption proceedings, had no standing before the court to challenge its jurisdiction at that stage, all jurisdictional questions having been heard and passed upon at the adoption hearing. The court, nevertheless, did consider the facts averred in the petition, aside from the point

of jurisdiction, and declared that "the best interests of the children, which have already been ruled upon by the Court, will still substantially outweigh the matters and things alleged in the petition to set aside the decree," and further that the court "is convinced that the right of the children to have a legal father during the period of their early youth substantially outweighs any possible benefits that may come to them by retaining the name of their deceased father, however illustrious that name might be."

Appellant was in fact not a party to the adoption proceedings. As the surviving natural and legal parent of the minor children, Mrs. Sanderson was the only person who had the legal custody and control of them. R.L.H. 1955, § 330-5; *In re Atanazio*, 26 Haw. 433. See also *In re Sunada*, 31 Haw. 328. In that capacity she gave her written consent, as required by law, for the adoption of the children by her husband. Accordingly, there was no occasion for the children to be represented by a guardian ad litem. The determination of the need for such representation lies within the sound discretion of the judge. *Re Adoption of Jane Doe*, 42 Haw. 250. Although a blood relative as paternal grandfather, appellant was not a necessary party to the adoption proceedings. Nowhere in R.L.H. 1955, Chapter 331, do we find any provision requiring a joinder of, or service of notice upon, any person standing in the position of this appellant in adoption proceedings.

Although adoption is a practice which has existed from time immemorial, formal judicial proceedings in adoption were not known to the common law. In the United States, such proceedings have been developed only by statute. 2 C.J.S., *Adoption*, § 2, p. 370; *In re Estate of Wilhelm*, 13 Haw. 206. In the early days of the territory, children were adopted by agreements of adoption duly recorded in the bureau of conveyances or by decrees issued

by circuit judges at chambers. It was not until 1915 that by statute it was first provided that adoption by court decree should be the exclusive method of accomplishing adoption. S.L.H. 1915, Act 47. Embodying subsequent amendments, the law of adoption, as it obtained when the instant case was presented to the juvenile court, now appears under R.L.H. 1955, Chapter 331. The proceedings being wholly statutory, adoption may be effected only by compliance with the prescribed requirements of the law.

It is generally recognized that adoption proceedings are *ex parte* in character and are usually not adversary proceedings. In every jurisdiction the paramount question in adoption proceedings is whether or not the best interest and welfare of the child or children will be served by the adoption. In this state, the statute specifically authorizes the judge of the juvenile court to enter a decree of adoption, if he is satisfied (1) that the child is adoptable under the law; (2) that the child is physically, mentally and otherwise suitable for adoption; (3) that the petitioners are fit and proper persons and financially able to give the child a proper home and education; and (4) that adoption will be for the best interest of the child. R.L.H. 1955, § 331-8.

The same statute also provides: "No decree of adoption shall be entered unless a hearing has been held at which the petitioner or petitioners, and any legal parent married to a petitioner, and any child whose consent is required, have personally appeared before the judge, * * *." Appellant points to the fact that neither he nor the children were present or represented at the adoption hearing. We do not perceive that the law required their presence or representation. As stated above, appellant was not a necessary party. Being both well under twelve years of age, the children's consent was not required. R.L.H. 1955, § 331-2. They were represented by their

surviving parent. Appellant, however, as will be discussed later, was not precluded from offering by petition or otherwise to show cause why the decree of adoption should not be set aside or modified.

A person, whether related to a child or not, who does not have any legal interest or custodial right in and to the child, cannot assail an adoption decree on the basis that he was not made a party to or given notice of the adoption proceedings. In *Klabis* v. *Hoyer*, 345 Ill. App. 365, 103 N.E. 2d 378, a foundling was legally adopted by the appellees. Later, one who claimed to be the child's godmother filed a petition in the adoption court to set aside the adoption decree. The petition having been denied, the petitioner appealed and urged in the appellate court, *inter alia,* that she was given no notice of the adoption proceedings, though the adoptive parents knew that she was the godmother and stood *in loco parentis.* Holding that the appellant did not have such standing and that she was not entitled to notice, the appellate court sustained the lower court. See also *In re Mayernik,* 292 S.W. 2d 562 (Mo.), where it was held that a "Friend of the Court," who had not been awarded the legal custody of the child but appointed under a Michigan statute to perform the prescribed duty of ascertaining the proper application of the child's maintenance allowance paid weekly by the child's divorced father, was not a necessary party to the adoption proceedings and therefore no error occurred in decreeing adoption without notice to him.

The case at bar has its parallel in *Turner* v. *Goelz,* 296 S.W. 2d 596 (Tex. Civ. App.). There, the second husband of the mother of the child in question, with her joining, filed a petition to adopt said child. The adoption was allowed and a decree entered. Later, when the mother died, the maternal grandparents filed an application to set aside the adoption. From an order denying the appli-

cation, the grandparents appealed. In affirming the order, the appellate court held that the appellants did not have any legal interest whatsoever in the adoption judgment at the time of its rendition, and that without such interest they could not be heard to assert that the adoption should be set aside and annulled.

Appellee raises the issue and contends that appellant has no more legal standing on this appeal before this court than he had before the juvenile court on his petition to set aside the decree of adoption. It appears that, rather than resort to a motion for a dismissal of the appeal at the outset, appellee has elected to submit the matter in connection with his presentation on the entire merits of the case on appeal. That an appellate court may *sua sponte* dismiss an appeal for want of legal standing on the part of the party appellant, there is no doubt. For the reason, however, that the instant case is one of first impression in this jurisdiction, and it appearing that the issues raised require an interpretation of certain pertinent provisions of our law of adoption, we will proceed to consider the questions presented for review.

Apropos of the issue pertaining to the legal standing of appellant, it is noted that there is a cumulus of judicial precedents, which support the rule that a person who has no legal interest or custodial right in and to a minor child in an adoption proceeding, cannot intervene or take an appeal. Other illustrative cases are *In re Cormack*, 110 Kan. 231, 203 Pac. 297; *Deffenbaugh* v. *Roden*, 182 Ark. 348, 31 S.W. 2d 406; and *Leonard* v. *Honisfager*, 43 Ind. App. 607, 88 N.E. 91. In *Cormack*, both the appellants and the appellees petitioned the probate court for the adoption of a child whose parents were deceased. After hearing both cases at the same time, the court awarded the child to the appellees, having found that it was for the best interest of the child. Upon appeal to the district

court, the decision of the probate court was affirmed. The supreme court to which further appeal was taken also affirmed, holding that the appellants "had no legal interest in the child's custody or nurture" and that "an appeal cannot be taken by one who is not affected by the decision." In *Deffenbaugh,* petitions were separately filed in the probate court by the appellant, a paternal aunt, and the appellee, maternal grandmother, for the adoption of two orphans. The probate court, after hearing both petitions, granted the appellant's petition. Upon appeal to the circuit court by the appellee, the appellant moved to dismiss the appeal on the ground that the appellee had no interest in the subject matter. The circuit court denied the motion, and following a trial by jury, the child was awarded to the appellee, reversing the order of the probate court. The appellant then appealed to the supreme court which reversed the circuit court on the ground that the motion to dismiss should have been granted, holding that: "Appellee, not being a party to the petition filed by appellant and the proceedings had thereon in the probate court, did not make herself a party by appealing from the order of adoption in her own name. Not being a party and not having the right to appeal in her own name from such order, the case should have been dismissed in the circuit court on motion of appellant." In *Leonard,* the lower court permitted the appellees to adopt an orphan. The appellant, who had been previously appointed guardian of the child, was given due notice by the court of the pendency of the petition for adoption. He appeared and objected to the adoption by the appellees on the ground that he had not given his consent thereto. From the court's order permitting the adoption, an appeal was taken. On the premise that the statute of Indiana did not require a guardian's consent, the appellate court dismissed the appeal, holding that the action of the lower

court "in permitting appellant to appear and answer the petition is without warrant in law, * * *." In discussing the case, the appellate court said: "If the child have parents living, they alone can interpose objections to the order of adoption in a proper case. The court in making the order looks alone to the welfare of the child, and the law presumes that in making or refusing the order the court will act with wisdom, and be guided solely by his [*sic*] consideration. No one but the living parents can stand in the way of the power and authority of the court to do in this matter what its judgment and discretion shall dictate will be to the best interest of the child."

We are cognizant of the fact that, inasmuch as the statutory provisions on adoption vary widely in different jurisdictions, the cases cited, while affording some light, cannot be fully applied in respect to matters dependent upon statutory construction. Our statute provides: "At any time within one year from the date of entry of any decree of adoption, the judge may, for good cause, set aside or modify such decree * * *." R.L.H. 1955, § 331-12. The language clearly contemplates that the judge of the juvenile court, within one year, may act to review a decree on the relation of any person who offers to show good cause. The determination of good cause, however, rests in the exclusive judgment and discretion of the judge. Such was the circumstance in the case at bar. The judge heard appellee's motion to dismiss, which in effect afforded appellant the opportunity to argue his petition to set aside the decree of adoption. At the conclusion of such hearing, the court ruled that "it does not have discretion to ignore the mandate of the statute and act otherwise than pursuant to the direction of the statute, which states that the family name of the adoptive child shall be changed to that of the adoptive parent or parents." In granting appellee's motion to dismiss, the court also considered the

welfare of the children, stating *inter alia,* that even if all of the substantive matters of fact alleged in the petition were proved, "the best interests of the children, which have already been ruled upon by the Court, will still substantially outweigh the matters and things alleged in the petition to set aside the decree."

We are of the opinion that under our statute, the juvenile court is not precluded from considering a petition or motion filed by any properly interested person to be permitted to show good cause why a decree of adoption previously entered should be set aside or modified. If the court determines that on the face of the petition, as was the case here, good cause is not shown, the court may dismiss the petition without further proceedings. In this respect, we do not follow in full the rule enunciated in the cases above cited that a person who was not a party to the adoption proceedings had no standing either in the court below or in the appellate court. In the instant case, having examined the petition and heard counsel on both sides, the court dismissed the petition, ruling that the adoption was in the best interest of the children and that it was mandated by law to change the children's surname to that of their adoptive father.

Appellant's opposition is not to the adoption as such but to the change of name. We hold that R.L.H. 1955, § 331-13, is mandatory and that the changing of surname is a concomitant of the adoption. The statute reads: "The family name of the adoptive child shall be changed to that of the adoptive parent or parents and the given name of the child may be fixed or changed at the same time." It is significant that the legislature used the word "shall" in relation to the change of the family name and "may" to the change of the given name. The use of the two different words indicates that the legislature acted advisedly, being obviously aware of the natural import and incidents

which follow or accompany a change of parenthood through adoption.

The word "shall" is generally construed as mandatory in legal acceptation. This court, however, recognizes that there is great diversion in decisional precedents involving the distinction between the words "shall" and "may." For instance, in *Tai Kee* v. *Minister of Interior,* 11 Haw. 57, the word "may," as it appeared in a statute, was construed as "shall" and given mandatory rather than a permissive effect. For the reason that an ambiguity is often created by the susceptibility of a word having two or more meanings, courts are impelled in such case to resort to other recognized criteria to determine its intended meaning. In every case, the ascertainable intent of the law-making body must prevail. Legislative intent is the "guiding star" in the interpretation of a statute. *Territory* v. *Morita,* 41 Haw. 1.

In the instant case, the word "shall," as it appears in R.L.H. 1955, § 331-13, was obviously employed by the legislature in a mandatory sense. When the legislature used the word "may" in the same sentence with reference to changing the given name as distinguished from the family name, it clearly revealed its intent to differentiate the meaning of "may" from that of "shall."

While such circumstance alone is persuasive, we would proceed further to substantiate our conviction that the provision governing the change of surname was intended to be mandatory. It is to be noted that when the 1956 legislature expanded the law governing adoption proceedings (S.L.H. 1945, Act 40), there were included provisions requiring secrecy of adoption proceedings and records (now R.L.H. 1955, § 331-15) and the certification of the decree of adoption to the bureau of public health statistics of the board of health, which "shall cause to be made a new record of the birth in the name of the child, * * *

with the names of the adoptive parents, * * *" (now R.L.H. 1955, § 331-14). It is reasonable to assume that in so providing, the legislature indicated its policy to keep undisclosed the fact of adoption, by authorizing and directing the making of a new birth record so as to show that the child was the natural child of the adoptive parents. Such being the obvious legislative policy, it would be inconsistent and repugnant to the very concept of secrecy of adoption, if the new birth record were to show that the child and his adoptive parents had different surnames.

We have examined the Arkansas and New York cases cited by appellant wherein the question of change of name was in issue. They were not adoption cases, nor was the issue ruled upon in the light of any governing statute. Ergo, they have no application here.

Having disposed of appellant's contention that the court below erred in dismissing his petition to set aside the decree "at least to the extent that the decree effects a change in the name of the children," we now consider whether appellant has any standing on his appeal to this court. We repeat that appellant was not a party to the adoption proceedings, nor was the appellee required by law to join him as a necessary party thereto. We have already referred to a few cases wherein a person, who was not a party to the adoption proceedings, was held to have no standing in court in his attempt to set aside a decree of adoption. But as stated above, in this jurisdiction, by statute, the judge of the juvenile court may hear any person who offers to show cause to set aside or modify a decree. So also, upon the original hearing under R.L.H. 1955, § 331-8, the judge may hear such evidence as any "properly interested person" may wish to present. The same situation, however, does not prevail in the case of an appeal taken to this court by a person who was not a

true party to the adoption proceedings. In this respect we cite, in support of our view, the cases previously mentioned.

It is also noteworthy that R.L.H. 1955, § 331-8, among other things, provides: "The director of the department of public welfare shall have the right to intervene in any adoption proceeding for the purpose of protecting the interests of the child or of any legal parent of the child, and shall have the same rights of appeal as any party to the proceeding." Insofar as an appeal to this court is concerned, we construe the above statute to mean that, aside from the parties involved in an adoption case, the director of the department of public welfare (now the successor of that officer under the Hawaii State Reorganization Act of 1959) is the only person who is authorized to appeal. Further, we are of the view that, while a grandparent, as in this case, may file a petition offering to show cause in the juvenile court and be heard in the sound discretion of the judge in a proper case, he is not a party entitled to appeal in the absence of a legal interest or custodial right. Accordingly, the fact that the judge below "allowed" the appeal from his order of June 18, 1956, was of no legal effect.

The foregoing conclusion of this court is dispositive of appellant's remaining contentions concerning the judge's refusal to permit the entire file of the adoption proceedings to be included as part of the record on appeal and to appoint him as guardian ad litem.

Appeal dismissed.

*Robert G. Hogan* (*Hogan & Howell* on the brief) for appellant.

*Howard K. Hoddick* (*Hoddick & Chang* on the brief) for appellee.