Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000450
29-AUG-2025
11:27 AM
Dkt. 107 SO

NO. CAAP-24-0000450

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF ADOPTION OF B.H., by M.P. and C.P.

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(CASE NO. 2FAN-23-0000007)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, McCullen and Guidry, JJ.)

Petitioners-Appellants Adoptive Mother and Adoptive Father (together, **Adoptive Parents**)[1] appeal from the Family Court of the Second Circuit's May 31, 2024 "Findings of Facts and Conclusions of Law and Order" denying their motion to set aside the adoption of Minor.[2] Adoptive Parents challenge the family court's order, asserting good cause existed to set aside the adoption. We affirm.

---

[1] We use the terms "Adoptive Mother[,]" "Adoptive Father[,]" and "Adoptive Parents" to readily distinguish the parties in this case. But we note that, upon adoption, the child is considered the natural child of the adopting parents. Hawaiʻi Revised Statutes § 578-16 (Supp. 2023).

[2] The Honorable James R. Rouse presided. The Honorable F. Matson Kelley presided over the adoption hearing.

For a brief background, Minor's mother passed away, and Minor moved from Texas to live with her father on Maui. Minor began exhibiting signs of mental health decline and threatened to kill herself if she continued living with her father. Adoptive Parents, Minor's godparents, stepped up to adopt Minor. At the adoption hearing, Adoptive Mother stated she loved Minor and could provide the extra support Minor needed. The family court granted the petition for adoption.

Almost nine months after the hearing, Adoptive Parents moved to set aside the adoption of Minor.

The family court denied the motion and Adoptive Parents appealed. On appeal, Adoptive Parents argue there was good cause to set aside the adoption because (1) there were defects regarding the adoption, (2) the attorney had a conflict of interest, and (3) it was in Minor's best interests.[3]

---

[3] In addition, Adoptive Parents challenge all findings "generally to the extent they are germane to this appeal" and sporadically reference various findings without quotation or proper reference to the findings. This challenge does not comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).

Adoptive Parents specifically challenge findings of fact 2, 3, 6-11, 14, 16-23, 26, 27, 29, 32, 34. Upon review, it appears the challenged findings were credibility determinations or supported by substantial evidence in the record. See Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (explaining credibility determinations will not be disturbed on appeal).

Adoptive Parents also contend conclusions of law (**COL**) 3-5, 8-14, and 16-21 are wrong. To the extent COL 3 and 4 discuss hānai relatives as related to the Interstate Compact on the Placement of Children (**ICPC**), the requirements of ICPC did not apply to this case as discussed below in section (1)(c). Thus, any error was harmless. The other challenged COL were not wrong.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve this appeal as follows, and affirm.

**(1)** Adoptive Parents first contend there was good cause to set aside the adoption based on defects in the adoption. Adoptive Parents argue it was wrong to approve the adoption because (a) there was insufficient evidence to establish that the out-of-state adoption was in Minor's best interests; (b) there was no proof that the Department of Human Services (**DHS**) was timely notified; (c) the sending or receiving state did not conduct an Interstate Compact on the Placement of Children (**ICPC**) investigation; and (d) Adoptive Parents did not receive a complete picture of Minor's mental state.

Hawaiʻi Revised Statutes (**HRS**) § 578-12 (2018) authorizes the family court, for good cause shown, to set aside any decree of adoption within one year from its date of entry and to make appropriate orders concerning the custody of the minor who is the subject of the decree.

Generally, good cause "means a substantial reason; one that affords a legal excuse[.]" Doe v. Doe, 98 Hawaiʻi 144, 154, 44 P.3d 1085, 1095 (2002) (formatting altered and citation omitted). Good cause "is a relative and highly abstract term, and its meaning must be determined not only by verbal context of

the statute in which the term is employed, but also by context of the action and procedures involved in the type of case presented." Id. (cleaned up). "The determination of good cause . . . rests in the exclusive judgment and discretion of the judge." In re Adoption of Watson, 45 Haw. 69, 77, 361 P.2d 1054, 1058 (1961).

**(a)** Adoptive Parents argue good cause existed because the evidence was insufficient to establish that the out-of-state adoption complied with HRS § 578-8(a).

HRS § 578-8(a) (Supp. 2019) requires the court to be satisfied that (1) the individual is adoptable, (2) the individual is suitable for adoption, (3) the petitioners are fit persons and financially able, and (4) the adoption is in the child's best interests.

Testimony showed Minor's mother passed away, and Minor was struggling with mental health issues. Adoptive Parents testified they understood and were willing to assume the rights and responsibilities for Minor. Testimony also showed Minor would be the second adoptive child of Adoptive Parents, Minor was their goddaughter, they loved her very much, and they had a home where Minor would flourish and be loved and protected. Adoptive Mother was a stay-at-home mom and Adoptive Father was a cardiologist; they were married since 1999. Adoptive Parents had no criminal convictions or prior contact with Child

4

Protective Services. Minor, who was thirteen years old when the adoption hearing occurred, confirmed verbally and in writing that she wanted Adoptive Parents to adopt her.

The family court did not abuse its discretion in declining to conclude good cause under these circumstances.

**(b)** Adoptive Parents argue good cause existed because there was no proof DHS was timely notified under HRS § 578-8(b).

HRS § 578-8(b) (2018) requires the court to "notify the director of human services of the pendency of such petition for adoption and allow a reasonable time for the director to make such investigation as the director may deem proper as to the fitness of the petitioners to adopt the individual[.]"

At the adoption hearing, counsel for Minor's father represented to the family court that the notice was mailed to DHS and twenty-one days had passed without a response from DHS. Copies of mailing receipts, filed after Petitioners filed their motion to set aside the adoption, confirmed DHS received the notice thirty-seven days before the adoption hearing.

Under these circumstances, we decline to conclude the family court abused its discretion.

**(c)** Adoptive Parents argue good cause existed because the sending or receiving state did not conduct an ICPC investigation.

However, the ICPC does not apply when certain relatives or a non-agency guardian send or bring a child into a receiving state. See HRS § 350E-1, Article VIII(a) (2015) ("The compact shall not apply to . . . [t]he sending or bringing of a child into a receiving state by his parent . . . and leaving the child with any such relative or non-agency guardian in the receiving state.").

Hawaiʻi recognizes that a person may become a guardian by parental appointment. HRS § 560:5-201 (2018) ("A person becomes a guardian of a minor by parental appointment or upon appointment by the court."). A parental appointment of a guardian becomes effective upon the appointing parent's death. HRS § 560:5-202(c) (2018).

Here, Adoptive Mother testified that after the death of Minor's mother, she learned Minor's mother nominated Adoptive Mother to be Minor's guardian. Thus, the ICPC did not apply to this case.

The family court did not abuse its discretion in declining to conclude good cause existed on this basis.

**(d)** Adoptive Parents argue good cause existed because they were not given a complete picture of Minor's mental state.

The record shows Minor's father and Adoptive Parents exchanged numerous text messages discussing Minor's treatment and medical issues. Minor's father testified he provided

everything he knew about Minor's condition to the Adoptive Parents. Adoptive Father acknowledged he and Adoptive Mother were allowed to and spoke with some of Minor's treatment providers.

The family court did not abuse its discretion in declining to conclude good cause existed on this basis.

**(2)** Next, Adoptive Parents contend that Erica **Amico**, attorney for Minor's father, acted as their de facto attorney, had a conflict of interest, and failed to advise them to seek their own counsel.[4]

Whether an attorney-client relationship exists is a question of fact. Woodfall v. Seitz, 133 Hawaiʻi 449, 329 P.3d 354, No. CAAP-11-0000646, 2014 WL 2921844, at * 3 (Haw. App. June 27, 2014) (SDO), citing Stender v. Vincent, 92 Hawaiʻi 355, 363, 992 P.2d 50, 58 (2000).

The family court found that "Petitioners did not consult with, sign an engagement letter, or retain the services of Erica Amico or the offices of Lowenthal & Lowenthal LLLC throughout the adoption proceedings." This finding is not clearly erroneous. Adoptive Father testified he did not believe that Amico was representing them. Adoptive Mother did not recall whether they signed an engagement letter, but

---

[4] Adoptive Parents also contend that Amico failed to inform them of the DHS notice requirement and ICPC compliance. Based on the discussion in section (1), error, if any, would be harmless.

7

acknowledged they did not pay a retainer or attorney's fees to Amico and were never told that Amico represented them.

In addition to failing to establish the existence of an attorney-client relationship, Petitioners fail to establish a conflict existed when the family court approved the adoption with the consent of all parties.

Thus, the family court did not abuse its discretion in declining to conclude good cause on this basis.

**(3)** Finally, Adoptive Parents contend the family court erred by "stating that even if good cause existed to set aside the adoption, the best interests of the child dictate denying" the motion to set aside. (Emphasis omitted.)

Minor's father testified Minor was doing well in foster care in California and that Maui did not have adequate facilities to address Minor's needs. On two separate occasions when Minor lived on Maui, Minor's father flew Minor off island for treatment as there were no adequate facilities on Maui. According to Adoptive Father, Minor was in another treatment facility in California close to Adoptive Parents' home and doing well right before she went to live in Adoptive Parents' home.

Thus, the record does not support Adoptive Parents' contention that the family court incorrectly analyzed the best

interests of Minor, and they point to no record evidence suggesting Minor would do better returning to Maui.

For the foregoing reasons, we affirm the family court's May 31, 2024 Findings of Facts and Conclusions of Law and Order.

DATED:  Honolulu, Hawaiʻi, August 29, 2025.

On the briefs:

Kai Lawrence,
for Petitioners-Appellants.

Peter Van Name Esser,
for Respondent-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge